**Donald Franklin BEHLER, III, Plaintiff**

v.

**John HANLON, Defendant**

**No. JFM–99–3877.**

United States District Court,
D. Maryland.

April 20, 2001.

Ronald W. Parker, Parker, Pallett, White Marsh, MD, for Plaintiff.

James P. O'Meara, Rollins, Smalkin, Richards & Mackie, Baltimore, MD, Brian D. Malkmus, Blackwell, Sanders, Peper, Martin, LLP, Springfield, MO, for Defendant.

## *MEMORANDUM AND ORDER*

GRIMM, United States Magistrate Judge.

This diversity personal injury case has been assigned to me, with the consent of the parties, for all proceedings. 28 U.S.C. § 636(c), L.R. 301.4. The pending dispute involves the plaintiff, Mr. Behler's, efforts to obtain discovery of facts relating to income earned, and work done, by Robert D. Keehn, MD, on behalf of insurance companies and defense attorneys in connection with conducting Rule 35 examinations of plaintiffs in personal injury cases. Such examinations, euphemistically referred to by counsel as "independent medical examinations" ("IME"), can be anything but independent, if they are performed by a doctor who has significant financial ties with insurance companies and attorneys assigned to defend personal injury cases. Counsel for Mr. Hanlon, the defendant, vehemently has objected to the discov-

ery that plaintiff seeks. Resolution of the pending dispute involves the interplay between the law of evidence relating to the impeachment of witnesses, and the scope of discovery allowed by FED. R. CIV. P. 26(b)(1) and (2), and both must be discussed. For the reasons that will be explained, the defendant's motion to preclude the plaintiff from discovering information about the income earned by Dr. Keehn in connection with his forensic activities on behalf of personal injury defendants is DENIED, but the information sought by plaintiff must be produced in a form and sequence different than that sought by plaintiff, and its production will be subject to a protective order.

## DISCUSSION

Plaintiff originally served a Rule 34 request on defendant, seeking tax returns, and documents relating to income earned during the last five years by Dr. Keehn from defense attorneys and insurances companies, in connection with performing IME's, and testifying as an expert witness in deposition or at trial. Further, plaintiff sought documents relating to the amount of time Dr. Keehn has spent doing such activities, as well as a list of cases where he has been retained for such services, and attorneys and insurers on whose behalf he has provided forensic services. It is plaintiff's contention that for more than 20 years Dr. Keehn has been a "defense expert for insurance companies", and plaintiff wants to discover information to use at trial to impeach Dr. Keehn's credibility by demonstrating bias[1]. Defendant an-

swered plaintiff's Rule 34 request with a blanket refusal to provide the requested information. Undeterred, plaintiff had a Rule 45 subpoena served on Dr. Keehn, which requested production of the information. In response, defendant filed a torturously titled "motion to strike reply to defendant's response to request for production of documents, to quash subpoena and for injunction", when a simple motion for protective order under Rule 26(c) would have been sufficient. Resolution of this motion turns on whether the information sought by plaintiff is discoverable under Rule 26(b)(1), and, if so, whether it must be produced as requested, or in some other manner, after application of the balancing factors of Rule 26(b)(2).

■ The pre-December, 2000 version of Rule 26 governs this dispute, as the scheduling order in this case was issued prior to December 1, 2000[2]. However, under either the "old version" of Rule 26(b)(1), which defined the scope of discovery broadly to include any matter, not privileged, that was relevant to the "subject matter" of the litigation, or the "new version" of Rule 26(b)(1), which defines the scope more narrowly as unprivileged facts relevant to the claims and defenses raised in the litigation, the result would be the same. This is because the information sought relates to the credibility of a witness whose testimony will be directed towards important issues in the case. Such information will fall within the scope of discovery under either version of the rules of procedure[3] because, as will be shown, a wit-

---

1. In support of his request, plaintiff cites *Wrobleski v. Lara*, 353 Md. 509, 727 A.2d 930 (1999), in which the Maryland Court of Appeals permitted inquiry regarding expert witness income for purposes of developing bias impeachment. While instructive, and consistent with the ruling in this order, it is not binding authority, as this is a diversity case governed by the Federal Rules of Evidence and procedure, not state procedural rules or cases. *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 109 (4th Cir.1995) (*citing Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir.1986)) (holding that the Federal Rules of Evidence govern in diversity cases); *Rowland v. Patterson*, 852 F.2d 108, 110 (4th Cir.1988) (*citing Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)) (holding that "federal courts apply federal rules of procedure, both those promulgated in the Federal Rules of Civil

Procedure as well as wholly judge made procedural rules, unless the Erie doctrine commands otherwise"); *Ronk v. Corner Kick, Inc.*, 850 F.Supp. 369, 370, n. 2 (D.Md.1994) (*citing Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)) (holding that the federal rules of procedure govern all matters of procedure in a diversity case).

2. See, *Thompson v. HUD*, 199 F.R.D. 168, 172 (D.Md.2001).

3. Under the revised Rule 26(b)(1),

[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product

ness always may be impeached by evidence that she or he is biased, prejudiced, has a financial interest in the outcome of the case, or a motive to testify in a particular manner.

### A. Methods of Impeachment

The importance of credibility of witnesses to the trial of cases cannot be overstated, and this is especially true with respect to expert witnesses. The rules of evidence provide frequent reminders of the importance of credibility issues in trials. Rule 611(b) defines the scope of cross-examination to include the subject matter of testimony developed during direct examination, as well as matters affecting the credibility of the witness. Rule 104(e) teaches that the mere fact that the court has admitted evidence at trial does not mean that it must be given any particular weight by the fact finder, and preserves the right of opposing parties to attack the credibility of witnesses. Similarly, Rule 806 allows a party to attack the credibility of a hearsay declarant by any means that could have been employed if the declarant had testified in person. Despite the recognition of the importance of credibility issues in the Federal Rules of Evidence, they only explicitly provide for three forms of impeachment [4], while, at common law, there were six primary methods of impeachment: (a) impeachment by demonstration of bias, prejudice, interest in the litigation, or motive to testify in a particular fashion; (b) impeachment by demonstration of incapacity to perceive, remember or relate; (c) impeachment by con-

tradiction; (d) impeachment by conviction of a crime; (e) impeachment by prior inconsistent statement; and (f) impeachment by untruthful character or prior bad acts. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 607.03[2][a] (2d. ed.1997) [hereinafter cited as "Weinstein Treatise"]. The adoption of the Federal Rules of Evidence, which expressly recognized fewer methods of impeachment than had existed at common law, was not intended to preclude those forms of impeachment that were not explicitly recognized, but instead to substitute a "relevance" based approach to impeachment of credibility, under Rules 401, 402 and 403, for the common law approach. *Id.* at § 607.03[1], [2][b]. Under such an approach, the focus would be whether there was any logical tendency of information to make a witness' trial testimony less credible than it would be absent introduction of the impeaching information. If so, then it would be admissible for impeachment, regardless of whether it fit into one of the common law's "cubbyholes" of impeachment, provided its exclusion was not required by Rules 402 or 403. Thus, as will be seen, each of the common law techniques of impeachment, including bias/interest/prejudice impeachment, that are not the subject of a specific rule of evidence, may still be used today.

#### 1. Bias Impeachment

◼ Although not directly covered by a specific rule of evidence [5], a witness may be impeached by showing that he or she is biased, has an interest in the outcome of the

---

could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action. Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389. Under the former Rule 26(b)(1), facts relevant to impeachment of the credibility of a witness would relate to the "subject matter" of the litigation.

4. Impeachment by bad character for truthfulness or by prior bad acts (Rule 608), impeachment by

conviction of a qualifying crime (Rule 609), and impeachment by prior inconsistent statement (Rule 613). *McKitis v. Defazio*, 187 F.R.D. 225, 228 n. 2 (D.Md.1999). Interestingly, when codified in 1994, the Maryland Rules of Evidence addressed this issue, and explicitly recognize all of the traditional ways of impeachment. Maryland Rule 5–616. Bias/prejudice impeachment is permitted at Rule 5–616(a)(4), and (b)(3).

5. Rule 408 (which allows use of statements made during negotiations to compromise disputed claims to prove bias or prejudice, while prohibiting their use to prove liability or damages), and Rule 411 (which permits introduction of evidence of insurance if offered to show bias or prejudice) indirectly recognize the applicability of bias/prejudice impeachment.

litigation, is prejudiced in some relevant way, or has a motive to testify in a particular way. *United States v. Abel*, 469 U.S. 45, 49–52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (permitting bias impeachment despite no rule of evidence specifically allowing it); *Still v. K–Mart Corp.*, 865 F.2d 255, No. 87–2204, 1988 WL 131792, at *2 (4th Cir.1988) (unpublished opinion) [6] (allowing extrinsic evidence of bias to impeach a witness that denied existence of facts showing bias during examination); *McKitis v. Defazio*, 187 F.R.D. 225, 228 (D.Md.1999) (citations omitted); Weinstein Treatise, § 607.04[1]; 27 Charles Allen Wright & Victor James Gold, *Federal Practice and Procedure* § 6095 (1990) [hereinafter "Wright and Gold Treatise"]; 1 Michael Graham, *Handbook of Federal Evidence*, § 607.7 (4th ed.1996) [hereinafter "Graham Treatise"]; Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence*, § 6.33 (4th ed.1995) [hereinafter "Mueller and Kirkpatrick Treatise"]; 1 *McCormick on Evidence* § 39 (John W. Strong, ed., 5th ed.1999) [hereinafter "McCormick Treatise"].

As Judge Weinstein aptly has described it:

Impeachment by showing the witness to be biased rests on two assumptions: (1) that certain relationships and circumstances impair the impartiality of a witness, and (2) that a witness who is not impartial may, consciously or otherwise, shade his or her testimony in favor of or against a party. Since bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction.

Weinstein Treatise, § 607.04[1]. Thus, the central purpose of bias/prejudice impeachment is to diminish the credibility of the witness to be impeached, as opposed to any substantive use of the evidence to prove a matter of consequence to the litigation independent of its impeachment value. Examples of relationships or circumstances that permit a finding of bias or prejudice are nearly limitless, and include:

love, hate, fear, family relationship, sexual preference, financial interest in outcome, *business relationship*, membership in an organization, shared beliefs, *payment by a party such as that made to an expert witness*, and in criminal matters the fact that the witness has not been charged with a crime, been granted immunity or is currently awaiting sentence.

Graham Treatise, at § 607.7 (emphasis added). Further, bias/prejudice impeachment is not viewed as collateral, meaning that it may be proved both by examination of a witness as well as by introduction of extrinsic evidence, if the witness denies the bias or prejudice, or is evasive or equivocal about it, during examination. Weinstein Treatise, at § 607.04[1], [4], Wright and Gold Treatise at § 6095; Graham Treatise, at § 607.7; Mueller and Kirkpatrick Treatise, at § 6.33; McCormick Treatise, at § 39. As will be discussed in more detail below, the fact that an expert witness may have a 20 year history of earning significant income testifying primarily as a witness for defendants [7], and an ongoing economic relationship with certain insurance companies, certainly fits within recognized examples of bias/prejudice impeachment, making such facts relevant both to the subject matter of the litigation, and the claims and defenses raised, and placing it squarely within the scope of discovery authorized by Rule 26(b)(1), in either its present, or immediately preceding version.

### 2. Impeachment by Contradiction

Another traditional method of impeachment not explicitly recognized by the Federal Rules of Evidence is impeachment by contradiction. At common law, a witness could be impeached by contradiction, sometimes referred to as "specific contradiction", meaning that the witness' testimony was shown to be incorrect or false, either through the witness' own concession during examination, or

---

6. Although the opinion is unpublished, and therefore not precedential, its logic is nonetheless persuasive, and its analysis helpful, by analogy, to resolving this issue.

7. The same would apply to the impeachment of an expert that had similar ties to plaintiffs or plaintiffs' counsel.

through the introduction of extrinsic contradicting evidence, either testimonial, documentary, demonstrative, or real. Weinstein Treatise, at § 607.06[1] ("Impeachment by contradiction or specific error is a well-recognized technique used to bring specific errors in testimony to the attention of the trier of fact."); Wright and Gold Treatise, at § 6096; Graham Treatise, at § 607.8; Mueller and Kirkpatrick Treatise, at § 6.58 (a witness may be impeached by contradiction in several ways: "close questioning" to elicit concessions of errors in testimony during direct; questioning a witness about the substance or implications of evidence already produced during the case to suggest contradictions; confronting the witness with his or her own contradictory prior statements; and calling another witness or introducing other extrinsic contradicting evidence); McCormick Treatise, at § 45. However, the rule at common law was that, since impeachment by contradiction frequently involved extrinsic proof, it was limited to non-collateral matters, meaning facts that were independently admissible for some purpose other than purely for impeachment. Weinstein Treatise, at § 607.06[1], [3][a] (contradiction may be proved by examination (having the witness admit mistake) or extrinsic evidence (having another witness testify to contradict), provided that extrinsic evidence must not be collateral); Mueller and Kirkpatrick Treatise, at § 6.58 (for impeachment by contradiction, extrinsic proof is permitted, provided it is non-collateral); McCormick Treatise, at § 45, 49 (contradiction impeachment may not be accomplished by collateral evidence). Thus, evidence that impeaches by contradiction, and is not collateral, can be both substantively admissible, as well as admissible for its impeachment value.

### 3. Impeachment by Incapacity

The final method of impeachment recognized at common law, but not expressly adopted by the Federal Rules of Evidence, is impeachment by demonstrating a defect in a witness' ability to perceive, remember or communicate [8]. In this regard, "[a] witness' credibility may always be attacked by showing that his or her capacity to observe, remember or narrate is impaired... at the time of the event, as well as at the time of trial." Weinstein Treatise, at § 607.05[1]; Wright and Gold Treatise, at § 6097; Graham Treatise, at § 607.4 ("The capacity and actuality of a witness' perception, his ability to record and remember sense impressions, and his ability to comprehend questions and narrate are relevant to an assessment of the weight to be given a witness' testimony."); Mueller and Kirkpatrick Treatise, at § 6.35 ("Limits or defects in sensory or mental capabilities bear both on the likelihood that a witness accurately perceived the events or occurrences he describes and the accuracy or completeness of his testimony."); McCormick Treatise, at § 49.

This form of impeachment usually is accomplished through examination of the witness, but, since defects in a witness' capacity are not considered collateral, they may be proven by extrinsic evidence as well. Weinstein Treatise, at § 607.05[2]; Graham Treatise, at § 607; Mueller and Kirkpatrick Treatise, at § 6.35 ("It is said that proof of sensory or mental incapacity is always relevant and never collateral, which means that cross-examination is appropriate and extrinsic evidence is also admissible."). Although not viewed as collateral, evidence of lack of capacity is admissible because of its relevance to impeachment of the credibility of a witness, rather than as substantive evidence going to the elements of the claims and defenses at issue.

### 4. Character for Untruthfulness/Prior Bad Act Impeachment

Rule 608 permits two distinct types of impeachment, both regarded as a form of character impeachment [9]. The first type is

---

**8.** Although there is no rule of evidence that permits impeachment by incapacity, this form of impeachment is closely related to Rule 602, which requires that, except for expert witnesses, no witness may testify unless he or she has personal knowledge of the facts to be told. Obviously, if it can be shown that a witness lacks personal knowledge because of some physical or mental incapacity, the witness would be disqualified from giving testimony as a threshold matter, under Rule 104(a).

**9.** *See, e.g.,* Rule 404(a)(3), which permits the use of character evidence for purposes of impeachment, pursuant to Rules 607, 608 and 609.

governed by Rule 608(a), and involves the impeachment of one witness, for example, witness A (the "impeached witness"), by calling a second witness, B (the "impeaching or character witness"), to provide opinion testimony [10], or reputation testimony [11] that witness A has the specific character trait of untruthfulness. In such circumstances, B is referred to as a "character witness". On direct examination, the character witness may give the basis for the opinion or reputation testimony, but may not testify as to specific acts. On cross-examination, however, provided there is a good faith basis for such inquiry, the character witness may be questioned regarding specific acts by the impeached witness, for purposes of testing the basis for the opinion. By definition, impeachment under Rule 608(a) involves the use of extrinsic evidence, inasmuch as the impeachment of A takes place not during the examination of A, but by calling another witness, B. Finally, evidence introduced under Rule 608(a) is admissible only for its impeachment value, not for any independent substantive purpose.

Rule 608(b) involves an altogether different type of impeachment. It permits the impeachment of any witness—by inquiry only—into prior bad acts that are probative of truthfulness, that did not result in a criminal conviction which would be admissible under Rule 609. If the witness admits during examination the prior bad act, the impeachment is accomplished. If he or she denies it, however, Rule 608(b) prohibits the introduction of extrinsic evidence of it, primarily to avoid confusion, delay, and introduction of collateral matters that would distract the jury. Thus, there is an inescapable irony associated with Rule 608(b) impeachment—it works only when the witness is honest enough to acknowledge the prior impeaching acts. Impeachment under Rule 608(b), therefore, only may be accomplished by examination of the witness. If the prior mis-

conduct is admitted, its relevance usually is limited to its impeachment value, as it has no other independent substantive value.

### 5. Impeachment by Prior Conviction

Rule 609 allows impeachment to be accomplished by proving that the witness has been convicted of a prior crime that meets certain criteria. This form of impeachment is regarded as another method of character impeachment [12]. To qualify, the crime must have been a felony [13], or a misdemeanor that has some logical nexus with the character trait of truthfulness, such as when the elements of the offense involve dishonesty or false statement. The conviction must have occurred within ten years of the date of the witness' testimony at trial, or his or her release from serving the sentence imposed under the conviction, whichever is later, unless the court permits an older conviction to be used, because its probative value substantially outweighs any prejudice, and it should, in the interest of justice, be admitted to impeach the witness. If the prior conviction is used to impeach a witness other than an accused in a criminal case, its admission is subject to exclusion under Rule 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, delay, confusion or the introduction of unnecessarily cumulative evidence. If offered to impeach an accused in a criminal case, the court still may exclude the evidence, if its probative value is outweighed by its prejudicial effect.

Although Rule 609 does not expressly describe the method by which impeachment by conviction of a crime may occur, the most expeditious way to accomplish it [14] simply is to ask the witness about the conviction during examination. If the witness denies the conviction, is equivocal about it, or cannot remember, it may be proven by extrinsic evidence. Evidence of a prior conviction is

---

**10.** The opinion testimony must be admissible in its own right, pursuant to Rules 701 or 702.

**11.** Which, though hearsay, nonetheless is admissible under Rule 803(21).

**12.** *See, e.g.,* Rule 404(a)(3).

**13.** A crime punishable by death or imprisonment of more than one year under the law under which the witness was convicted.

**14.** And, therefore, the method the court most likely will require, under Rule 611(a).

relevant because of its ability to impeach, not because it has independent substantive value.

### 6. Impeachment by Prior Inconsistent Statement

The final method of impeachment recognized by the rules of evidence also is the most frequent and popular method—impeachment by prior inconsistent statement. It is governed primarily by Rule 613, which identifies different procedures for accomplishing the impeachment by examination of the witness, as opposed to the introduction of extrinsic evidence. Rule 613(a) governs impeachment by prior inconsistent statement during the examination of the witness. It allows the impeaching attorney immediately to confront the witness with the prior statement, without first showing it to him or her, or describing its contents, or the circumstances under which it was made. If the witness unequivocally admits having made the prior statement, and if it is contradictory of his or her trial testimony, then the impeachment is complete upon the acknowledgment that the statement was made, and generally there is no need extrinsically to admit the statement if it has been memorialized in some tangible format. However, if the witness denies making the statement, or is equivocal or evasive about having made it, or

claims not to be able to remember the earlier statement, under circumstances where the court determines that this disclaimer is not credible [15], then extrinsic proof of the prior statement is permissible, provided Rule 613(b) is followed.

Rule 613(b) governs extrinsic proof of prior inconsistent statements. It permits extrinsic proof only if, during examination, the witness was afforded an opportunity to explain or deny the prior statement, unless the court, in the interest of justice, allows its admission, or the prior inconsistent statement also qualifies as an admission under Rule 801(d)(2).

Prior inconsistent statements are admissible only as impeachment, unless they also qualify for admission substantively, under Rule 801(d)(1)(A) (inconsistent statement made under oath at a prior trial, hearing, court proceeding or deposition); as an admission by a party opponent under Rule 801(d)(2), or under some other exception to the hearsay rule.

The methods of impeachment that may be employed at trial, whether authorized by the rules of evidence or the common law, may be summarized in the following chart.

| Type | Examination | Extrinsic | Substantive vs. impeachment |
|------|-------------|-----------|------------------------------|
| Interest, motive, bias, prejudice | yes | yes | usually impeachment purpose only |
| Contradiction | yes | yes | both substantive and impeachment value |
| Incapacity | first attempt to prove by examination | if W denies, equivocates or cannot recall during examination, may be proved by extrinsic evidence | usually impeachment purpose only |
| Character impeachment, Rule 608 | prior bad acts impeachment under rule 608(b) only may be accom- | character for untruthfulness impeachment through a character | usually impeachment purpose only |

**15.** Courts have not always agreed on whether extrinsic proof of a prior statement of a witness may be introduced when the witness testifies at trial that he or she cannot remember the events contained within the prior statement. Graham Treatise, at § 613.2. Some have argued that a lack of memory is not "inconsistent" with an earlier statement, and therefore Rule 613 is inapplicable. Others have required the court to make a preliminary finding that the testimony at trial that the witness cannot recall the events recorded in the prior statement is incredible before the prior statement may be admitted. *Id.* Alternatively, the party seeking introduction of the earlier statement still can attempt its introduction as past recollection recorded, Rule 803(5).

| | plished by examination | witness is extrinsic evidence | |
|---|---|---|---|
| Character impeachment, conviction of crime, Rule 609 | first attempt to prove by examination | if W denies, equivocates or cannot recall during examination, may be proved by extrinsic evidence | usually impeachment purpose only |
| Prior inconsistent statement, Rule 613 | in most instances, Rule 613(a) requires this first | if W denies making stmt, equivocates or incredibly claims inability to recall, extrinsic proof allowed | for impeachment purpose only, unless qualifies under 801(d)(1)(A), or 801(d)(2), or other hearsay exception |

## B. Scope of Discovery

Under the version of Rule 26(b)(1) that governs the outcome of this case, the scope of discovery extended to facts that are not privileged that are relevant to the subject matter of the litigation. Under the revised scope of discovery adopted on December 1, 2000, the scope of discovery was narrowed to cover facts that are not privileged that are relevant to the claims and defenses raised in the pleadings. *Thompson v. HUD,* 199 F.R.D. 168, 171 (D.Md.2001). The commentary to the most recent rule changes makes it clear that even under the narrowed scope of discovery facts bearing on the credibility of witnesses are relevant to the claims and defenses raised by the pleadings. *Id.* at 171–72 (citing commentary to the December 1, 2000 changes to the Federal Rules of Civil Procedure, 192 F.R.D. at 389). Thus, under either the "old" or "new" version of Rule 26(b)(1), a party legitimately may seek discovery of facts that relate to any of the six forms of impeachment discussed above. However, as Rule 26(b)(2) instructs, the mere fact that such information falls within the scope of legitimate discovery does not mean that parties are entitled to unfettered discovery of impeaching information, by whatever means of discovery they seek. Indeed, as noted in *Thompson v. HUD,* a determination that facts which a party seeks to discover fall within the scope of discovery set out by Rule 26(b)(1) is but the first step in the analysis. *Id.* at 171. Even if discoverable, the court may, upon a Rule 26(c) motion for protective order, or on its own initiative, restrict or prevent requested discovery if, following an evaluation of the Rule 26(b)(2) factors, it determines that the discovery would be burdensome, duplicative, unnecessarily costly, or insufficiently probative to the issues in the litigation to warrant the expense of production. *Id.* at 171.

■ In the present case, no intellectually honest argument can be made that the information sought by plaintiff regarding Dr. Keehn's activities as a defense expert witness is not relevant to bias/prejudice impeachment, and, therefore, within the scope of discovery permitted by Rule 26(b)(1). However, legitimate issues are raised regarding the extent of the bias discovery sought, the methods of discovery employed, and possible abuses that could occur if the discovery is permitted without a protective order. For example, plaintiff seeks discovery of the total income earned by Dr. Keehn for the last five years, the amount thereof earned providing defense Rule 35 examinations, records relating to the hours spent by Dr. Keehn in this capacity, copies of his tax returns, and a listing of all insurance companies with whom he is affiliated, as well as a listing of all cases in which he has provided expert services. This is overkill. While there may be cases in which an expert's gross income, and the specific amounts thereof earned by providing services as an expert witness, may be discoverable, this should not be ordered routinely, without a showing, absent here, why less intrusive financial information would not suffice. Most people are sensitive about their income, and who knows the details about it. By their very nature, expert witnesses are knowledgeable of information that is scientific, technical, or specialized, generally acquired by long, hard study and experience. When asked to provide expert testimony, they are in a position to request compensation that matches their qualifications, which

can seem shockingly high to those not familiar with the costs of modern litigation. Moreover, in the post-*Daubert/Kumho Tire* era, and in light of the Rule 26(a)(2) disclosure requirements and the recent changes to Rules 702 and 703, counsel increasingly are more selective in who they ask to be expert witnesses, knowing that they will be subject to the utmost scrutiny. Those who pass muster likely will be able to command fees commensurate with their skill and experience, which may, to a lay member of the jury, appear exorbitant, when in fact what was charged is the going rate. Rule 26(a)(2)(B) requires disclosure of the compensation received by a retained expert in the particular case at issue, and counsel routinely bring this out during cross-examination when questioning an opposing expert witness. However, permitting routine disclosure of the expert's gross compensation, from all sources—including those unrelated to litigation activities—would provide the jury with little information relevant to a fair assessment of the expert's credibility, while concomitantly introducing the real possibility of creating confusion, distraction and even prejudice. Nor is the trial of a case facilitated if a party sponsoring an expert attempts to draw the possible sting of expert compensation by attempting to prove that what his or her expert charges is within the norm, as this opens the door for collateral issues that could further distract the jury [16].

 Instead, the jury readily should be able to assess possible bias on the part of an expert witness if they are made aware of the total percentage of his or her gross income that is earned from providing expert witness services. Similarly, there is no need for the expert to have to produce his or her tax returns, if the party seeking the discovery has accurate information regarding the percentage of income earned as an expert.

 Additionally, while documents relating to all cases within a stated period of

time for which an expert was retained are relevant to possible bias impeachment, in this case I do not believe that Dr. Keehn should be required to assemble these records, provided the plaintiff is able to obtain the equivalent information by a more expedient, less costly method. To this end, I will order that Dr. Keehn be produced for questioning at a deposition regarding the information sought by plaintiff. If possible, this deposition will be by telephone, and its scheduling will be expedited. The questioning by plaintiff at the deposition will not last more than 2 hours, provided Dr. Keehn provides complete and unevasive answers to proper questions asked, as is required by Rule 37(a)(3). Further, prior to the deposition, he will make a diligent search of all records in his possession, custody and control, to enable him to provide the following information: (1) The percentage of his gross income earned for each of the preceding five years attributable to performing expert witness services on behalf of insurance companies, and/or attorneys defending personal injury cases; (2) a list of cases in which he has provided such services during the last five years, in sufficient detail to enable the plaintiff to locate the court file, and/or issue a subpoena for it. At a minimum, the name, address and telephone number of the attorney and/or insurance claims representative that engaged Dr. Keehn will be provided; (3) the name of each insurance company for which Dr. Keehn has provided services as an expert witness in personal injury cases, for the preceding ten years.

If, after taking this deposition, plaintiff can demonstrate that additional information is required to enable him to undertake reasonable bias impeachment of Dr. Keehn, he may seek leave from the court to take additional discovery. Further, should the court determine that Dr. Keehn has not provided complete, and unevasive, answers to the discovery herein ordered, or if the court determines that he has not made a good faith, diligent effort to assemble the information

---

**16.** Once again, there may be cases where it is appropriate to compel discovery of an expert witness' total compensation, and the portions thereof earned from functioning as an expert witness. There may even be a case where tax returns and other documents relating to expert activities should be compelled as well. However, Rule 26(b)(2) would require a far stronger showing of need than is present in this case, and it is unlikely that such intrusive information would be ordered in routine cases.

for which discovery was ordered, then additional discovery will be ordered, and appropriate sanctions, including not allowing him to testify at trial, if warranted by the level of non-compliance, may be imposed.

Finally, to protect against possible abuse of the sensitive financial information for which discovery has been allowed, it will be subject to a protective order that prohibits dissemination or copying of the information produced for any purpose not directly related to the prosecution of this case, absent the consent of Dr. Keehn, or further order of this Court. This protective order will remain in effect following the conclusion of the pending case, unless withdrawn by order of this Court.

### C. CONCLUSION

For the reasons stated above, the defendant's motion to preclude the plaintiff from discovering information about Dr. Keehn's income in connection with his forensic activities on behalf of personal injury defendants is denied. However, the information sought by plaintiff will not be produced as requested, it will be produced as specified in this Memorandum and Order, and its production will be subject to the protective order imposed.