**Brad ROGERS, Plaintiff,**

v.

**UNITED STATES NAVY; Department of the Navy; David Caine, and Does 1 through 50, inclusive, Defendants.**

**No. CIV.03CV0253 LAB (AJB).**

United States District Court, S.D. California.

Aug. 12, 2004.

David E Wilkinson, Gates O'Doherty Gonter and Guy, San Diego, CA, for Plaintiff.

David B. Wallace, Assistant U.S. Attorney, San Diego, CA, for Defendants.

Order Granting Defendant's Renewed Motion for Protective Order [Doc. No. 21]

BATTAGLIA, United States Magistrate Judge.

Defendant the United States Navy previously filed a motion for protective order seeking to preclude Plaintiff from discovering the amount of total gross income which the government's medical expert, Dr. Schwab, derives from medical-legal work. By order filed May 12, 2004, the Court denied the government's motion because at that time there existed no controversy—Plaintiff's counsel had not sought to learn Dr. Schwab's private financial information or indicated a firm desire to learn that information and Dr. Schwab had not refused to divulge any particular information. On July 27, 2004, following the unsuccessful Mandatory Settlement Conference in this case, counsel for the government filed a stipulation of facts and a request to renew the previously-filed motion for protective order. Upon review of that stipulation, the Court concluded that there now exists a live controversy with regard to the proper scope of discovery relating to Dr. Schwab's income from medical-legal work. Thus, the Court granted the government's request to renew the original motion for protective order. Plaintiff has now filed an opposition and the government has filed a reply. This motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1), and the August 13, 2004 hearing is VACATED. For the reasons set forth below, the government's renewed motion is GRANTED.

### Background

This Federal Tort Claims Act case arises from an incident which Plaintiff alleges occurred on September 11, 1999 on San Nicholas Island Naval Facility where Plaintiff was temporarily working as a contract employee with the United States Navy. In short, Plaintiff alleges that he was unjustifiably attacked by a Navy Shore Patrol Officer during a traffic accident investigation, and that said attack resulted in injuries to Plaintiff's back and elbow.

In order to evaluate the nature and extent of Plaintiff's alleged injuries resulting from the incident, as well as the causation of such injuries and the reasonableness and necessity of Plaintiff's medical treatment, the government retained board-certified orthopedic surgeon Gregory Schwab, M.D. On June 1, 2004, Dr. Schwab examined the Plaintiff, and on June 24, 2004, the government served Plaintiff's counsel with Dr. Schwab's 27–page report.

Plaintiff's counsel, Mr. Wilkinson, is familiar with Dr. Schwab having retained Dr. Schwab in the recent past as a medical expert in a state court case. Soon after learning that the government had designed Dr. Schwab as its medical expert in this case, Mr. Wilkinson contacted government counsel to discuss Dr. Schwab. Mr. Wilkinson indi-

cated that he was aware that Dr. Schwab had a policy of not disclosing the particular dollar amount of his income from his entire medical practice as well as from his medical-legal practice. At that time, however, Mr. Wilkinson did not know whether he would want to pursue this particular type of financial information from Dr. Schwab in this case.

Having now received Dr. Schwab's report, and with Dr. Schwab's deposition set to be taken on August 18, 2004, Plaintiff's counsel has now determined that he will, in fact, ask Dr. Schwab at his deposition to divulge the actual dollar amount of income that he earns from his medical-legal practice. Plaintiff's counsel argues that such information is relevant to show Dr. Schwab's bias toward the defense in this case and in general. Dr. Schwab has agreed to provide estimates of the *percentage* of his medical practice that involves forensic work versus clinical work, the *percentage* of his income that is derived from forensic work, the *percentage* of his forensic practice that is on behalf of plaintiffs versus defendants, the number of forensic evaluations he performs per week, and his hourly billing rate for performing forensic services. In addition, of course, Dr. Schwab has agreed to disclose the actual dollar amount that he has been paid by the government for his services in this case. Dr. Schwab, however, will refuse to answer any questions seeking to learn his gross annual income earned as a result of forensic work or his gross annual income from all of his combined medical activities.

Government counsel points out that if Dr. Schwab is required to testify as to is his gross annual income earned as a result of his forensic work, Plaintiff's counsel will easily be able to calculate Dr. Schwab's total gross income based upon Dr. Schwab's disclosure of the percentage of his total practice is forensic versus clinical. The government argues that the information Dr. Schwab has agreed to provide is more than sufficient for Plaintiff to argue financial bias, such that it is not necessary to know the actual dollar amount of Dr. Schwab's forensic work.

Plaintiff argues that the actual dollar amount must be disclosed to allow Plaintiff the full opportunity to demonstrate Dr. Schwab's bias and motive to testify in support of the government in this case. Counsel have been unable to resolve this conflict, and this motion followed.

### *Discussion*

There is no controlling authority regarding the issue of the discoverability of the type of private financial information sought by Plaintiff from Dr. Schwab. Persuasive authority, however, is provided by the case of *Behler v. Hanlon*, 199 F.R.D. 553 (D.Md.2001). In *Behler*, the Plaintiff sought extensive private financial information regarding the defendant's medical expert. As in this case, the plaintiff in *Behler* contended that the defense medical expert was biased for financial reasons to provide an opinion favorable to the defense. Plaintiff sought the private financial information for use at trial to impeach the medical expert's credibility by demonstrating bias. The court[1] in *Behler* closely examined the scope of relevancy of such information under Rule 26(b)(1) of the Federal Rules of Civil Procedure, as well as the proper scope of the information as impeachment testimony at the time of trial.

The court concluded that the information sought by plaintiff regarding the doctor's activities as a defense expert witness was certainly relevant. *Id.* at 561. The court further concluded, however, that the scope of information sought by the plaintiff was "overkill" and thus properly limited pursuant to Rule 26(b)(2) or Rule 26(c). *Id.* at 562. In the court's view, "the jury readily should be able to assess possible bias on the part of an expert witness if they are made aware of the total percentage of his or her gross income that is earned from providing expert witness services." *Id.* The court also required defendant to disclose information regarding prior cases in which the doctor had served as an expert and the names of each insurance company for which the doctor had provided expert witnesses services in personal injuries

---

1. The case was assigned to Magistrate Judge Grimm for all purposes upon the consent of the parties pursuant to 28 U.S.C. § 636(c).

**536**

cases, similar to the information required under Rule 26(a)(2)(B).[2]

In this case, the government has agreed to have Dr. Schwab disclose a substantial amount of information regarding the nature of his forensic work. Dr. Schwab will provide estimates of the *percentage* of his medical practice that involves forensic work versus clinical work, the *percentage* of his income that is derived from forensic work, the *percentage* of his forensic practice that is on behalf of plaintiffs versus defendants, the number of forensic evaluations he performs per week, and his hourly billing rate for performing forensic services. Plaintiff will also learn the actual dollar amount that Dr. Schwab has been and will be paid by the government for his services in this case. This should be more than sufficient information to allow Plaintiff to effectively cross-examine Dr. Schwab at the time of trial regarding his opinions and the financial motive or bias that may have influenced those opinions.

In opposition to the government's motion, Plaintiff's counsel argues that while the *Behler* decision may be appropriate in run-of-the-mill personal injury cases, this case is "unique" based upon the dramatically unfavorable 28–page opinion rendered by Dr. Schwab. Plaintiff's counsel argues that Dr. Schwab's opinion includes irrelevant information and oversteps the bounds of the expert designation, showing that Dr. Schwab will go to any extent to reach a conclusion supportive of the party that retains his services. Plaintiff's counsel, however, does not explain how he would be unfairly limited in arguing bias unless he learns the actual dollar amount of Dr. Schwab's gross income from forensic work. Plaintiff's counsel does not explain how the information that Dr. Schwab has agreed to provide will be insufficient to show bias and prejudice.

The Court concludes that Plaintiff's counsel will be more than able to challenge Dr. Schwab's impartiality at the time of trial based upon the information he has been willing to provide without the need to learn the actual dollar amount of Dr. Schwab's annual income. Because Plaintiff does not persuasively explain the need to learn Dr. Schwab's private financial information, the scope of inquiry is properly limited pursuant to Rule 26(b)(2)(iii) and Rule 26(c).

### Conclusion

For the reasons set forth herein, the government's renewed motion for protective order is GRANTED. Plaintiff's counsel shall not inquire of Dr. Schwab at the time of his deposition regarding the amount of his gross annual income from forensic work.

IT IS SO ORDERED.

---

**2.** Because the scheduling order in *Behler* was entered prior to the December 1, 2000 amendment of Rule 26, it appears that the court did not require compliance with the expert disclosure requirements of Rule 26(a)(2).