# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Nadina Young

v.

Food Lion Store
Number 622

March 23, 2006

Case No. (Law) 05-684

BY JUDGE MARK S. DAVIS

This matter is before the Court on the "Motion for Protective Order of Felix M. Kirven, M.D.," a non-party to this action, requesting that the Court quash a witness subpoena served on him. Dr. Kirven also requests an award of attorney's fees pursuant to Va. Code § 8.01-271.1, alleging that the subpoena was filed for an improper purpose. The factual and procedural background of the case, discussion of the issues, and conclusions are set forth below.[1]

---

[1] Plaintiff is represented by O. L. Gilbert, Esq., with the law firm of Gilbert & Albiston, P.C. Defendant is represented by Warren H. Britt, Esq., who was noticed and did not appear at the hearing. Felix M. Kirven, M.D., was represented by S. Lawrence Dumville, Esq., with the law firm of Norris & St. Clair, P.C.

## I. *Factual and Procedural Background*

The Motion for Judgment alleges that plaintiff Nadina Young was injured on or about August 11, 2003, while a business invitee at Food Lion Store No. 622 on Taylor Road in the City of Chesapeake. Young alleges that Food Lion maintained its premises in a negligent and careless fashion, causing a risk of harm to those on the premises, and failed to warn her of such condition. Young further alleges that she suffered injury as a result of such negligence. Young seeks damages against Food Lion in the amount of $2,000,000.00. Food Lion has generally denied these allegations of negligence. Trial of this case is scheduled for August 14, 2006, with a jury.

Food Lion filed a "Motion for Order for Rule 4:10 Examination," contending that it had requested plaintiff submit to a Rule 4:10 medical examination with Kirven in Norfolk, Virginia, and that Young refused to make herself available. The hearing on Food Lion's motion for such medical examination is scheduled for March 24, 2006. Young's attorney then served an attorney-issued witness subpoena on Kirven to appear at the March 24, 2006, hearing. Kirven alleges that the subpoena was "served on him as a continuing pattern of harassment by [plaintiff's attorney] and members of his law firm and is filed for the sole purpose of driving Dr. Kirven from the field of physicians who are willing to perform Rule 4:10 examinations of plaintiffs," and that, if the court compels him to attend the hearing, plaintiff should compensate him for his time pursuant to Va. Sup. Ct. R. 4:1(b)(4). As a result, Kirven seeks a protective order quashing the subpoena, as well as an award of attorney's fees resulting from the need to take such action.

At the hearing held on March 20, 2006, Young countered that it is in the Court's discretion to determine which physician should conduct a Rule 4:10 examination and that, in doing so, the Court should permit Young's attorney to examine, at the appointment hearing, the physician tentatively chosen by Food Lion. Young provided the Court with a copy of an Order entered by the Norfolk Circuit Court sustaining a plaintiff's objection to Dr. Kirven's performing a Rule 4:10 examination. *Spence v. Ellison*, Law No. 99-1140 (Norfolk Circuit Court, May 5, 2000). However, at the March 20, 2006, hearing, Young never provided the Court with a specific substantive reason why Kirven should not conduct the proposed Rule 4:10 examination. After hearing argument, the Court ruled on Kirven's motion, signed the Order presented by counsel, and reserved the right to issue this Opinion and Order.

## II. *Discussion*

### A. *Medical Examination*

#### 1. *Standard for Protective Order*

Va. Sup. Ct. R. 4:1(c) provides that "[u]pon motion . . . by the person from whom discovery is sought . . . for good cause shown, the court . . . may make any order which justice requires to protect a . . . person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." The granting or denying of discovery is within the sound discretion of the trial court. *O'Brian v. Langley Sch.*, 256 Va. 547, 552, 507 S.E.2d 363, 366 (1998).

#### 2. *Rule 4:10*

We begin our analysis with the text of Va. Sup. Ct. R. 4:10, which provides that "[w]hen the . . . physical condition . . . of a party . . . is in controversy, the court in which the action is pending, upon motion of an adverse party, may order the party to submit to a physical . . . examination by one or more health care providers . . . employed by the moving party. . . ." Va. Sup. Ct. R. 4:10 goes on to provide that "[t]he order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties, [and] shall specify the . . . person or persons by whom it is to be made." Once the examiner prepares her report, she is directed to forward a copy of her report to the Court and the parties. Va. Sup. Ct. R. 4:10(c). The rule also provides that subdivision (c) of the rule "does not preclude discovery of a report of a health care examiner or the taking of a deposition of such examiner in accordance with the provisions of any other Rule." Because the plain language of the rule does not answer the question of whether a plaintiff may subpoena a potential Rule 4:10 physician to appear and testify at the hearing where defendant requests the appointment of such witness, we look to case law for guidance.

In his text, *Bryson on Virginia Civil Procedure,* § 9.09[1]-[2] (4th ed. 2005), Professor Bryson notes that the first general Virginia rule providing for medical examinations was promulgated in 1954, with continuing changes since then such that the present Virginia Rule 4:10 is substantially different from its federal counterpart, Fed. R. Civ. P. 35. Professor Bryson also notes that under current practice "[u]sually the physician named by the judge in his or her order is the one nominated by the moving party, and this is the preferred

procedure." He goes on to note that "[i]t is appropriate for the adverse party to have a physician of his own choice; this guarantees the equal opportunity to examine the medical condition in controversy" and the "examinee can always select his own medical expert in addition and has usually done so before the lawsuit is commenced."

### 3. *Virginia Case Law*

The Virginia Supreme Court discussed the broad parameters for application of the predecessor to Rule 4:10(a) (Rule 3:23(d)) in *Virginia Linen Service, Inc. v. Allen*, 198 Va. 700, 96 S.E.2d 86 (1957). The relevant portions of predecessor Rule 3:23(d) and current Rule 4:10(a) are very similar. In particular, both predecessor 3:23(d) and current 4:10(a) provide that the Court "may order" the examination. In discussing this language, the *Allen* Court observed that, while the "rule says the court 'may order' the examination . . . [w]hether it will do so is in the sound judicial discretion of the court *on the showing made.*" *Id.* at 703, 96 S.E.2d at 88. (emphasis added). That opinion goes on to note that the rule "does not say how the court shall determine who shall be named" and that, [i]f the court wishes, it may require counsel to make suggestions or furnish a list of qualified persons" and "*may investigate their fitness* and their availability, then make its selection and name its choice in its order." *Id.* (emphasis added). The Court also observed that, when "[t]he Rule says the person named in the order shall be employed by the moving party . . . [t]hat means he is to be paid by the moving party and it is the business of the court to arrange about that." *Id.*

Other courts have also addressed the application of Va. Sup. Ct. R. 4:10 and provided some insight into the circumstances that might support an objection to such an examination. Then-Judge Compton addressed the general application of the rule in *Fields v. Walke*, 1 Va. Cir. 96 (Richmond 1969), where defendants moved under Va. Sup. Ct. R. 4:10 for a physical examination of the respective plaintiffs by a particular physician. In one of the two cases discussed in the opinion, Judge Compton notes that the plaintiff asserted that there is a close personal and/or business relationship between defendant's counsel and the physician," but the defendant countered "that none of the above charges made by the respective plaintiffs have any basis in fact." In granting defendant's motions for the examinations, Judge Compton noted that "[i]t rests within the sound discretion of the court under Rule 4:10(a) whether to designate a physician chosen by the defendant to examine the plaintiff in a personal injury action, but the defendant has no absolute right

to the choice of his own physician and the power still remains with the court to determine who shall be the examining physician." *Id.* Judge Compton also observed that "[t]his is not to say that a defendant's selection of a physician will be approved by the Court in every case, for each request under this rule must be judged on the peculiar facts of the particular case." There is no indication that Judge Compton heard, or requested, testimony from the proposed physician.

Another circuit court considered an objection to such an examination in *Stampe v. Noyes*, 17 Va. Cir. 273, 274 (Virginia Beach 1989). The plaintiff objected, alleging that the doctor suggested by defendant routinely performed examinations for insurance companies. In addressing this contention, Judge Owen commented that "[t]here is no contention that the doctor of chiropractic requested to be named by defendant is not competent or is not in good standing in the community;" and, "[t]he contention that he 'routinely performs exams for insurance companies' does not constitute any significant impediment to his designation under these circumstances." There is no indication that Judge Owen heard, or requested, testimony from the proposed physician.

A similar objection was considered in *Perkins v. Lillich*, 23 Va. Cir. 218, 219-21 (Charlottesville 1991). In that case, Judge Swett reviewed plaintiff's contention that the physician suggested by defendant was "one normally selected by defendants in personal injury actions, and it would be unfair for her to have to undergo an examination by a doctor hand-picked by the defendant." *Id.* After determining there was good cause for the examination, Judge Swett addressed the question of how the physician should be selected. Observing that one of the alternatives suggested by the *Allen* Court was for both sides to submit names and allow the Court to make the selection, Judge Swett concluded that "[w]hile the suggestion has considerable merit, it would, in the opinion of this judge, involve the court unnecessarily in matters that normally are handled and decided by counsel." *Id.* However, the *Lillich* Court went on to note that "[t]his is not to say that this procedure is not a useful one *where the physician selected by a party is shown to be partial or biased in favor of one party and prejudiced against the other.*" *Id.* (emphasis added). The Court concluded that, where the parties cannot agree:

> The procedure here that should be followed is that, once good cause is shown, the physician selected to conduct the examination will be initially determined by the defendant. If the adverse party objects to the physician named and thereafter the

> parties fail to agree on an alternative, then the matter should be scheduled for a hearing, at which time the objecting party is permitted to demonstrate the basis for the objection on grounds such as bias, prejudice, or the like. If the objection is sustained, then the court would require each side to submit names to the court and the court will select from the lists.

Judge Swett did not hear testimony from the proposed physician, but stated that the plaintiff could schedule a "hearing to disqualify [the doctor] on the basis of bias, prejudice, or similar grounds. . . ." *Id.* at 221.

### 4. *Other Jurisdictions*

While the Virginia rule and the federal rule are different in some respects, they have very similar language regarding the manner in which the physician is chosen. Because of this similarity, the Court will look to law from federal courts.[2] Fed. R. Civ. P. 35(a) provides that "[w]hen the . . . physical condition . . . of a party . . . is in controversy, the court . . . may order the party to submit to a physical examination by a suitably licensed or certified examiner. . . ." The rule goes on to state that the "order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify . . . the person or persons by whom it is to be made."

The United States Supreme Court addressed the application of Fed. R. Civ. P. 35 in *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19, 85 S. Ct. 234, 243, 13 L. Ed. 2d 152, 164 (1964). In pertinent part, the Court said:

> Subject to . . . [the restrictions of Rules 26(b) and 30(b) and (d)], a party may take depositions and serve interrogatories without prior sanction of the court or even its knowledge of what the party is doing. Only if a deponent refuses to answer in the belief that the question is irrelevant, can the moving party request under Rule 37 a court order requiring an answer.
>
> Significantly, this freedom of action, afforded a party who resorts to depositions and interrogatories, is not granted to one

---

[2] While federal court decisions applying Fed. R. Civ. P. 35 are not binding on this Court, the Court may look to such decisions for guidance where they are informative and there is no controlling Virginia statute, rule, or decision.

proceeding under Rules 34 and 35. Instead, *the court must decide as an initial matter*, and in every case, whether the motion requesting production of documents or the making of a physical or mental examination adequately demonstrates good cause. The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words "good cause," the Rules indicated that there must be greater showing of need under Rules 34 and 35 than under the other discovery rules. (emphasis added) (citing *Guilford National Bank v. Southern Ry.*, 297 F.2d 921, 924 (4th Cir. 1962). . . .

Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements, as the Court of Appeals in this case itself recognized, are necessarily related. 321 F.2d, at 51. *This does not mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.*

(Emphasis added.)

This language makes clear that the party seeking an examination may sometimes make his showing without presenting witnesses, but also suggests that such testimony may sometimes be necessary. However, it does not directly address whether, and if so, how, the examinee may present evidence in support of any objection she may have.

The relevant language of Fed. R. Civ. P. 35 was also considered in *Powell v. United States*, 149 F.R.D. 122, 124 (E.D. Va. 1993). In that case, the defendant sought an examination of the plaintiff, and plaintiff objected and

contended that the suggested physician was biased against plaintiffs in lawsuits. That Court opined that "absent a 'valid objection' to the physician defendant chooses, the defendant's choice is to be respected." In support of this view, the Court stated that:

> The "valid objection" requirement provides defendants with the same opportunity as plaintiffs in choosing an expert witness. Defendants have absolutely no say in determining which physician a plaintiff chooses as a treating physician or an expert witness; likewise, a plaintiff should be limited in his ability to object to the selection of the defendant's expert witnesses.

*Id.* at 124. In response to plaintiff's contention that the physician was biased, defendant countered that plaintiffs failed to show any "personal" bias. The proposed physician did not testify at the hearing, though his curriculum vitae was submitted. After concluding that the curriculum vitae established the physician had the credentials to give an opinion about an alleged orthopedic injury, the Court noted that "[t]his is not a case where a physician had a business or social relationship or attorney-client relationship with the attorney representing the defendant." However, the Court conceded that "[s]uch a relationship would prevent the appointment of Dr. Hamilton as a medical examiner." *Id.*

Other Courts have similarly distinguished between qualifications and credibility. *McKitis v. Defazio*, 187 F.R.D. 225, 227-28 (D. Md. 1999) (distinguishing between physician's credibility and qualifications and permitting appointment with opportunity for pre-trial motion in limine to address alleged bias); *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 26 (D. Conn. 1994) (funding from defendant to defendant's expert affected credibility, not qualifications); *Looney v. National R.R. Pass. Corp.*, 142 F.R.D. 264, 265 (D. Mass. 1992); *Sexton v. Bates*, 41 S.W.3d 452, 456-57 (Ky. App. 2001) (defendant's choice of physician entitled to respect but for plaintiff's valid objection); *see also Moore's Federal Practice – Civil*, vol. 7, chap. 35, § 35.07[2] (Matthew Bender 2005) (alleged bias on the part of the proposed examiner is not a reason for rejecting the party's choice, and the fact that the examining physician is regularly funded or paid by the moving party goes to the issue of the physician's credibility as a witness and not to the issue of qualification to conduct the examination; there is no requirement that Rule 35 examinations be conducted by physicians wholly unconnected with either party, and in the absence of evidence that the examiner has a personal bias or

will use discredited or harmful examination techniques, the defendant is permitted to designate own expert).

While the *Powell* Court concluded that the plaintiff failed to raise a "valid objection" to the appointment of the physician, it did observe that the plaintiff was free at trial to cross-examine the physician on any questions of bias or prejudice and that nothing in its opinion prevented plaintiff from attempting to impeach the physician using matter raised in its motion objecting to his appointment. *Powell*, 149 F.R.D. at 124. The Virginia Supreme Court has reached the same conclusion. *Sawyer v. Comerci*, 264 Va. 68, 79, 563 S.E.2d 748, 755 (2002) (plaintiff may cross-examine defendant's expert witness regarding prior testimony for defendant and income from such testimony); *Lombard v. Rohrbaugh*, 262 Va. 484, 493-98, 551 S.E.2d 349, 353-57 (2001) (permitting plaintiff's cross-examination of defendant's expert to show prior income received from defendant's insurance company).

While the Virginia Supreme Court has permitted such cross-examination at trial, it has not addressed pre-trial efforts to obtain impeachment material. Some courts have refused to allow a party to issue a pre-trial subpoena duces tecum to an opposing expert seeking information potentially reflecting bias, *Tyler v. Williams*, Jour. Civ. Litig., vol. VI, no. 4, p. 499, C.A. No. 3:93CV865 (E.D. Va. May 5, 1994) (quashing as grossly overbroad and burdensome subpoena duces tecum to defense expert issued after physical examination); *Marsh v. Jackson*, 141 F.R.D. 431, 432 (W.D. Va. 1992); *Marron v. Stromstad*, 2005 Alas. LEXIS 152, *11-14 (Alaska Sup. Ct. Nov. 10, 2005), while others have permitted issuance of such a pre-trial subpoena duces tecum with limitations. *Stanley v. Norfolk Southern Railway Corp.*, 2001 Va. Cir. LEXIS 17 (Alexandria 2001); *Behler v. Hanlon*, 199 F.R.D. 553, 561-63 (D. Md. 2001). This Court has found no controlling Virginia authority directly addressing this issue, though the Virginia Supreme Court did address the interplay between Va. Sup. Ct. R. 4:9 and Va. Sup. Ct. R. 4:1(b)(4) in *Flora v. Shulmister*, 262 Va. 215, 222, 546 S.E.2d 427, 430-31 (2001). Fed. R. Civ. P. 26(b)(2)(B) now requires mandatory pre-trial disclosure of limited data regarding an expert who may be used at trial, including certain financial data and cases where prior testimony was provided. *See Lehan v. Ambassador Programs, Inc.*, 190 F.R.D. 670, 672-73 (E.D. Wa. 2000).

### 5. *Threshold Determination*

The issue before the Court is whether to quash the subpoena for Kirven's appearance at the March 24, 2006, hearing on defendant's request for appointment of Kirven. If it is in the "sound judicial discretion of the court on the showing made" to decide whether to order an examination before a particular physician, *Allen*, 198 Va. at 703, 96 S.E.2d at 88, then the Court will obviously have to determine at the March 24, 2006, hearing whether a sufficient showing has been made by the party seeking the examination. The burden is on Food Lion, the moving party, to prove: (1) that the plaintiff's medical condition is in controversy, (2) that a motion has been made to the court, (3) that a notice of the motion has been given to the examinee and all parties, (4) that good cause for the examination has been shown, and (5) that the court deems it appropriate. Va. Sup. Ct. R. 4:10(a), *Bryson, supra*, § 9.909[2]. If this burden is met, then Young may assert an objection to Kirven conducting the examination.

In the ordinary course of events, unless Young asserted a valid objection at the Rule 4:10 hearing and met her burden of persuasion on such objection, the examination would be ordered. However, as a result of the protective order hearing on March 20, 2006, the matter came before the Court earlier than it otherwise would have been presented, and this required that Young allege (not necessarily prove) facts making out a prima facie valid objection. At that March 20, 2006, hearing, Young failed to *allege* any prima facie valid objection to Kirven which would provide this Court with the ability to determine that he is inappropriate for appointment.

Providing the Court with a May 5, 2000, Order from another court indicating that a plaintiff objected to Kirven on the grounds that he was not a fit and proper selection to perform a Rule 4:10 examination, such order simply noting that plaintiff's objection was sustained, does not amount to a prima facie showing of a valid objection on the facts of this case. The order makes no finding as to the reasons for the Court's decision. Furthermore, the order does not contain any information that would allow this Court to judge the relevance of that objection and ruling to this case. Therefore, such order, standing alone, fails to provide a prima facie showing of a valid objection.

Just as the Court noted in *Powell*, qualifications can in the first instance be determined at a Va. Sup. Ct. R. 4:10 appointment hearing based upon written submissions such as a curriculum vitae or an affidavit. It is conceivable that a Court would need more information, including testimony, to fulfill its function under Va. Sup. Ct. R. 4:10, but that should rarely, if ever,

be the case. As the U.S. Supreme Court noted in *Schlagenhauf*, 379 U.S. at 118-19, 85 S. Ct. at 243, 136 L. Ed. 2d at 164, every movant seeking the appointment of a physician to make such an examination must make a decision as to whether he will need testimonial evidence at such hearing, and therefore proceeds at his own risk if there is no such testimony available. Stating this obvious truth is not meant to suggest that movants should come to such hearings prepared to present testimony, it is just meant to make an observation about the relative risks in making decisions about how the motion is prosecuted.

As noted above, assuming that a movant carries its initial burden at such a hearing, no examination of the proposed physician is warranted at such a Rule 4:10 hearing unless the examinee alleges a good faith factually supported prima facie "valid objection," similar to those referenced in the cases above. Even then, it is in the sound discretion of the trial court, based upon the facts of each case, whether to hear such testimony. Young did not allege such a good faith factually supported valid objection as to why Kirven is inappropriate to conduct the examination. Because Young made no such substantive allegation, and hence no prima facie showing, it is not proper to require Kirven to attend such hearing and be examined by Young's counsel. Because Young did not make such a showing in response to Kirven's motion for protective order, Food Lion's burden at the hearing is to meet the criteria outlined above for the appointment to take place. Young is free to argue at that hearing that Food Lion has failed to make the requisite showing and/or assert facts supporting a valid objection, but, for the reasons stated above, this Court will not require Kirven's presence at such hearing. As also discussed above, Young is, of course, free to file a post-examination pretrial motion in limine, and/or seek to impeach any Rule 4:10 physician at trial.

## B. *Attorney's Fees*

Kirven also requests that the Court award him his attorney's fees for filing the motion for protective order. Virginia Code § 8.01-271.1 provides that the signature of an attorney on a paper constitutes a certificate by him that "it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

When reviewing a trial court's award of sanctions for harassing activity under this statute, the Virginia Supreme Court has looked for "evidence of threats or expressions of ill will," as well as a "pattern of persistent and harassing pleadings." *Oxenham v. Johnson*, 241 Va. 281, 289, 402 S.E.2d 1, 5

(1991). Defendant argues that the subpoena served on Kirven by Young's counsel reflects "a long pattern of harassment of Dr. Kirven by Mr. Gilbert and his partner, Mr. Albiston." In support of this assertion, Kirven produced copies of several subpoenas duces tecum: a January 3, 2005, subpoena duces tecum seeking financial and other information from Kirven by such counsel in a separate federal court action;[3] a July 9, 2002, subpoena duces tecum to Kirven seeking financial and other information;[4] an unsigned subpoena duces tecum with a production date of April 7, 2003, seeking financial and other information; and, an April 21, 2000, subpoena to Kirven seeking financial and other information. The current witness subpoena before this Court was issued March 3, 2006, and commands Kirven to appear on March 24, 2006, to testify in this Court.

This Court cannot conclude, based upon these documents and the assertions of counsel, that the witness subpoena in this action was interposed for an improper purpose. Furthermore, the question of whether the subpoena was intended to harass Kirven is intertwined with the need to determine the state of the law on the issuance of the subpoena as of the time it was signed. The Virginia Supreme Court has said that it applies an objective standard of reasonableness in order to determine whether a litigant and his attorney, after reasonable inquiry, could have formed a reasonable belief that a pleading was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Gilmore v. Finn*, 259 Va. 448, 527 S.E.2d 426 (2000). While this standard arguably addresses subsection (i) of the certification requirement in 8.01-271.1, it is relevant to the Court's consideration of Kirven's request for attorney's fees because, in determining whether counsel for Young had an improper purpose in issuing the current subpoena, the Court must consider (among other things) whether the witness subpoena in this action was issued with a good faith belief that it was warranted under existing law. Therefore, the Court should consider whether Young could have formed a reasonable belief that a pleading was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. The Court observes that there is no controlling case directly on point addressing the question whether Va. Sup. Ct. R. 4:10

---

[3] Because the date for production on this subpoena is January 20, 2006 (not 2005), the date counsel signed it may have actually been 2006, rather than 2005.

[4] Because the date for production on this subpoena is July 19, 2004 (not 2002), and because the subpoena seeks information through 2003, the date counsel signed it may have actually been 2004, rather than 2002.

provides a legal basis for issuing a subpoena to a proposed examiner before he has been appointed by the Court and/or before he has performed his examination and rendered his report. That being the case, this Court cannot say that Young and/or her counsel could not have formed a reasonable belief that such a subpoena was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Such a conclusion militates against a finding that the issuance of this subpoena, following the other subpoenas duces tecum cited by Kirven, was issued with an improper purpose, such as to harass Kirven. Therefore, the request for attorney's fees is denied.

### III. *Conclusion*

For the reasons stated above, Kirven's motion for a protective order quashing the witness subpoena is granted and his motion for attorney's fees is denied. Since the Court entered the Order presented by counsel on March 20, 2006, this Opinion and Order supplements and amends that Order. Food Lion's motion for a Rule 4:10 examination and Kirven's motion for a protective order are ordered filed. Since a court reporter was present at the March 20, 2006, hearing and since Young stated her position on the record, the Court will dispense with the Va. Sup. Ct. R. 1:13 counsel endorsement requirement. It is so ordered.