THOMPSON, et al., Plaintiffs,

v.

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.

Civ.A. No. MJG–95–309.

United States District Court, D. Maryland.

March 13, 2001.

Susan R. Podolsky, Washington, DC, Susan Goering, American Civil Liberties Union of Maryland, Eleanor Montgomery, Maryland Disability Law Center, Malissa Ruffner, Barbara Samuels, Baltimore, MD, for Carmen Thompson, Rhonda Harris, JoAnn Boyd, Doris Tinsley, Lorraine Johnson and Isaac J. Neal.

Allen F. Loucks, Office of the United States Attorney, Baltimore, MD, Anne L. Weismann, U.S. Department of Justice, Joseph V. Jest, Anderson Kill & Olick, LLP, Jessika A. Lenner, Department of Justice, Washington, DC, Lynne A. Battaglia, U.S. Attorneys Office, Baltimore, MD, Frank Hunger, U.S. Department of Justice, Washington, DC, Carol A. Evans, Department of Justice, Civil Div. Federal Programs Br., Washington, DC, for United States Department of Housing and Urban Development and Henry G. Cisneros.

Wilbur D. Preston, Jr., Harry S. Johnson, Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, MD, Deborah Sweet Byrnes, Whiteford, Taylor, Preston, Trimble & Johnston, Towson, MD, Neal M. Janey, Miles & Stockbridge, Thomas Bevely Corey, Baltimore, MD, Lisa L. Walker, Whiteford Taylor & Preston, LLP, Elva Elizabeth Tillman, Baltimore, MD, for Housing Authority of Baltimore City, Daniel P. Henson, III, and Mayor and City Council of the City of Baltimore.

Paul D. Shelton, George A. Nilson, Kathleen A. Ellis, Piper Marbury Rudnick & Wolfe, LLP, Baltimore, MD, for Jonestown Planning Council.

Mark J. Adams, Baltimore, MD, pro se.

## MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

Plaintiffs are class representatives of African American residents of Baltimore's public housing developments. They filed suit in January, 1995 against the U.S. Department of Housing and Urban Development and its' secretary (the "federal defendants") and the Housing Authority of Baltimore City ("HABC"), its executive director and the Mayor and City Council of Baltimore (the "local defendants"). The class action lawsuit alleged that the defendants and their predecessors, from 1933 through the present, established and perpetuated *de jure* racial segregation in Baltimore's public housing, in violation of the 5th, 13th, and 14th Amendments to the United States Constitution, as well as Title VI of the Civil Rights Act of 1964, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. Sections 1981, 1982, and 1983, the U.S. Housing Act of 1937 and the Housing and Community Development Act of 1974. Plaintiffs seek declaratory, injunctive, and equitable relief, and attorneys' fees.

In the spring of 1996, the parties entered into a partial consent decree that settled certain claims against the defendants. The decree is ambitious in its scope, and to oversee its implementation a special master was appointed by the court. From the approval of the consent decree until the middle of 2000, most of the attention of the parties has been devoted to its implementation. However, in mid–2000 the plaintiffs initiated discovery against the defendants, and the undersigned was referred the case for resolution of discovery disputes. Pending is the motion by the plaintiffs to compel the local defendants to provide responsive answers to Rule 33 and 34 discovery requests. The dispute is fully briefed, Paper No. 233. No hearing is necessary, Local Rule 105.6. Although counsel presented their dispute in a summarized chart format, that included a space for the court's ruling with respect to each of the disputed interrogatories and document production requests, a format that generally works well to expedite the resolution of differences regarding Rule 33 and 34 discovery, the dispute presents issues of first impression regarding the December 1, 2000 changes to the Rules of Civil Procedure governing the scope of discovery. Because of the likelihood of similar disputes, in other cases, regarding these same issues, a more formal ruling that

discusses in more detail than appropriate for a summary ruling may be of assistance to counsel in this and other cases.

For the reasons that follow, I am denying the plaintiffs' motion, without prejudice, and returning this dispute to the parties to meet, confer, and take the further action discussed below.

## DISCUSSION

The July 1, 1970 changes to the Rules of Civil Procedure transformed Rule 26 from one governing only depositions, to a rule that regulated "the discovery obtainable through any of the discovery devices" listed in the rules. FED.R.CIV.P. 26, 48 F.R.D. 457, 498. The "new" Rule 26 remained in place until December 1, 2000, and established the scope of discovery broadly as follows: "[p]arties may obtain discovery regarding any matter, *not privileged,* which is *relevant* to the *subject matter involved in the pending action....* It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears *reasonably calculated to lead to the discovery of admissible evidence.*" (Emphasis added). The 1993 changes to the rules of procedure added provisions to Rule 26(b)(2) to:

> enable the court to keep tighter rein on the extent of discovery. The information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression.... The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery ...

FED.R.CIV.P. 26, 146 F.R.D. 401, 638. Following these changes, Rule 26(b)(2) stated:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule *shall* be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative, or is obtainable from some other source that is more convenient,

less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) *the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.* The court may act upon its *own initiative* after reasonable notice or pursuant to a motion under subdivision (c) (Emphasis added).

The combined effect of the changes to Rule 26(b)(1) and (2) was to create a procedural syllogism of sorts, which defined the contours of the scope of discovery. Under it, facts were discoverable if: (1) relevant to the subject matter of the litigation; and (2) not privileged; and (3) if not themselves admissible, then reasonably calculated to lead to admissible evidence, UNLESS the court, *sua sponte,* or at the request of a party, determined that the discovery sought was: (a) unreasonably cumulative, duplicative, or obtainable from another more convenient, less burdensome or less expensive source; or (b) the party seeking the discovery had had sufficient opportunity by discovery in the pending action to obtain it; or, (c) following a costs-benefits analysis that balanced (i) the burden or expense associated with the requested discovery; (ii) the likely benefit to the requesting party of the challenged discovery; (iii) taking into account the following factors: (aa) the needs of the case; (bb) the amount in controversy, (cc) the parties resources, (dd) the importance of the issues at stake in the litigation, and (ee) the importance of the proposed discovery in resolving the issues, the court determined that the requested discovery should not be allowed.

For purposes of applying the above test the definition of relevance in FED.R.EVID. 401 [1] was most helpful; Rule 26(b)(5) and Discovery Guidelines 5 and 9 of this court required that privileges be identified with particularity in order to justify a refusal to

---

1. FED.R.EVID. 401 defines relevant evidence as having any tendency to make a fact that is of consequence to the litigation more or less probable than it otherwise would be.

disclose requested information, and courts were quick to add that unparticularized claims of burden or expense were insufficient. *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38–39 (D.Md.2000) (citations omitted). Moreover, application of the cost-benefit factors identified in Rule 26(b)(2) enabled the court to allocate the costs of discovery between the parties, thereby, in appropriate cases, requiring a party seeking contested discovery to pay all or part of the expenses of obtaining it. *Id.* at 38.

Despite the obvious utility of the Rule 26(b)(2) factors in tailoring discovery to accommodate fair disclosure without imposing undue burden or expense, they have tended largely to be ignored by litigants, and, less frequently than desirable, used by the courts, *sua sponte*, to manage discovery [2]. Instead, particularly with respect to disputes involving Rule 33 and Rule 34 discovery, the focus of the litigants tends to be the party seeking discovery's perceived "right" to all information relating to the broad "subject matter" of the litigation, without any reflection as to the real usefulness of the information sought, or the burden or expense required to produce it, countered by the party resisting the discovery's unparticularized claims of burden, expense, irrelevance, and privilege. Further, despite the requirements of Local Rule 104.7 and Discovery Guideline 1(d) of this court, the efforts of the litigants to resolve their disputes before seeking court intervention infrequently demonstrated that, during their discussions, the parties themselves attempted to evaluate the Rule 26(b)(2) factors to reach a common ground.

The most recent revisions to the discovery rules imposed changes intended to reach lingering concerns about the overbreadth and expense of discovery, and remind the courts and litigants of the fact that in determining what discovery should take place in a particular case, Rule 26(b)(1) is but the first step, necessarily followed by balancing the Rule 26(b)(2) factors. Accordingly, the December 1, 2000 changes to Rule 26(b)(1) restricted the scope of discovery to unprivileged facts relevant to "the claim or defense of any party", unless the court determines that there is "good cause" to permit broader discovery relevant to the subject matter of the action, but not more directly connected to the particular claims and defenses. They additionally required that discovery of inadmissible facts that appear reasonably calculated to lead to the discovery of admissible evidence also must be within the scope of permissible discovery. Furthermore, they emphasize that "all discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)", the cost-benefit balancing factors. *See* Court Rules, 192 F.R.D. 340, 388–90.

The commentary to the rule changes clarifies that the amendment to the scope of discovery provisions of Rule 26(b)(1) "is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery", so that, if there is "an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." *Id.* at 389. It also emphasizes the desirability of courts more vigorously applying the Rule 26(b)(2) cost-benefit factors in determining allowable discovery. *Id.* at 390.

Although the rule changes do not specifically explain the difference in scope between discovery relevant to "claims and defenses" in the litigation, and discovery relevant to the "subject matter" [3], it is clear that the former is intended to be narrower than the later, and that the broader discovery is only to be allowed for "good cause". Further, it seems clear that the most valuable reference to use in implementing the new change in the scope of discovery is the pleadings that have been filed, as that is where the claims and defens-

---

**2.** Court Rules, 192 F.R.D. 340, 390 "The [Advisory] Committee has been told repeatedly that courts have not implemented these [Rule 26(b)(2)] limitations with the vigor that was contemplated".

**3.** "The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision." Commentary to the rule changes, Court Rules, 192 F.R.D. 340, 389.

es are stated. However, the pleadings are only the starting place, as:

> [a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389.

Thus, counsel should be forewarned against taking an overly rigid view of the narrowed scope of discovery. While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer. Such a restrictive approach would run counter to the underlying purpose of the rule changes, as explained by the commentary, run afoul of FED.R.CIV.P. 1, and undoubtedly do disservice to the requirement of notice pleading in Rule 8, as parties would be encouraged to plead evidentiary facts, unnecessary to a "short and plain statement of the claim showing that the pleader is entitled to relief", Rule 8(a)(2), simply to increase the likelihood of getting broader discovery. It equally is clear, however, that the new rule represents a change from the old version, and that, unless expanded by the court for good cause shown, it is intended that the scope of discovery be narrower than it was, in some meaningful way.

Lest litigants and the court become consumed with the philosophical exercise of debating the difference between discovery relevant to the "claims and defenses" as opposed to the "subject matter" of the pending action—the juridical equivalent to debating the number of angels that can dance on the head of a pin—the practical solution to implementing the new rule changes may be to focus more on whether the requested discovery makes sense in light of the Rule 26(b)(2) factors, than to attempt to divine some bright line difference between the old and new rule. Under this approach, when confronted with a difficult scope of discovery dispute, the parties themselves should confer, and discuss the Rule 26(b)(2) factors, in an effort to reach an acceptable compromise, or narrow the scope of their disagreement.

For example, if the plaintiff seeks discovery of information going back 20 years, and the defendant objects on the grounds of burden, a possible solution may be to agree first to produce information going back 5 years. Then, depending on the results of a review of the more recent information, if more extensive disclosure can be justified, based on the results of the initial, more limited, less burdensome, examination, it should be produced. Similarly, if the burden and expense of searching for and producing all documents that fall within the scope of a broad Rule 34 request is objected to, the party objecting might agree to spend up to a stated amount of time looking for the records, and producing them for inspection, with the understanding that if, following review of the documents produced, the requesting party can justify a request for more, under the Rule 26(b)(2) factors, it would be produced, perhaps under a cost sharing, or shifting agreement. The court, too, if called upon to resolve discovery disputes, may find such an incremental, phased approach useful, as a result of evaluating the Rule 26(b)(2) factors. *See e.g., Marens,* 196 F.R.D. at 40 (ordering the defendant to produce documents going back 5 years, subject to plaintiff's ability to request broader disclosure if, following initial review, additional discovery was warranted under the Rule 26(b)(2) factors, and raising the possibility of the plaintiff having to bear some or all of the expense of additional production).

The pending discovery dispute illustrates the points raised above. The plaintiffs have filed a sweeping lawsuit alleging discrimina-

tory action by the defendants covering three–quarters of a century, and involving all aspects of the public housing programs in Baltimore. Within a year or so of suit being filed, the parties entered into a comprehensive partial consent decree, itself broad in scope, which settled many, but by no means all, of the claims originally filed. After a hiatus in discovery of several years, plaintiffs initiated renewed discovery requests, under Rules 33 and 34. The local defendants objected to certain of these requests, asserting: overbreadth and burden, without giving particulars to permit either plaintiffs or the court meaningfully to evaluate this claim; and that the challenged requests exceeded the scope of permissible discovery as they were not tailored to the existing "claims and defenses" remaining in the litigation following the consent decree. Plaintiffs, justifying their discovery requests, argue their broad entitlement to discovery relating to the whole of the dispute that is the basis for the litigation, without once attempting to identify which claims that survived the partial consent decree will be furthered by the requested information, or addressing the burden to the local defendants to produce it. Both parties seem content to leave it to the court to sift through the 56 page complaint and the 74 page partial consent decree to determine what discovery should be allowed. Moreover, although counsel for the parties undoubtedly have conferred in an effort to resolve or narrow the dispute, they have provided the court with nothing to show whether they have attempted to apply the Rule 26(b)(2) balancing factors to try to reach common ground, at least as to some of the areas of dispute. This will not do.

I am returning this dispute to the parties with guidance as to how they should meet and confer to attempt to resolve or narrow their differences. With respect to the Rule 26(b)(1) scope of discovery challenge raised by the local defendants, they are advised that, pursuant to Administrative Order 2000–1, signed by Chief Judge Motz on November 14, 2000, the amendments to Rule 26 that became effective on December 1, 2000, "apply in this District to all cases in which the initial scheduling order is issued on or after December 1, 2000, but not to cases in which the initial scheduling order was issued prior to December 1, 2000". Accordingly, the new provisions of Rule 26(b)(1) that narrowed the scope of discovery are inapplicable to this case, where the initial scheduling order was issued long before December 1, 2000. While this means that plaintiffs are entitled to the more favorable scope of discovery allowed by the former rule, they are cautioned that, as indicated above, the parties are expected to focus their discussions not on their scope differences under Rule 26(b)(1), but instead on a particularized analysis of the burden/benefit factors of Rule 26(b)(2). In this regard, it seems clear that the challenged requests are too broad as stated, and need to be narrowed by a good faith analysis of which claims that survived the partial consent decree will be furthered by the discovery sought. Additionally, the local defendants are cautioned that, provided the plaintiffs accommodate legitimate concerns of the local defendants regarding burden and expense, it is likely that for each of the discovery requests challenged on the basis of scope or burden, some discovery will be appropriate. However, unparticularized claims of burden or expense, as the court stated in *Marens,* will not suffice. If the local defendants claim that they cannot produce requested information because of burden, they must justify this claim with specific details that can be evaluated by the plaintiffs, and, if necessary, the court.

This means that the parties must set aside their differences as adversaries and make a good faith effort to reach common ground on the disputes. It strikes me that this case is a perfect example of how creative counsel can employ the phasing methods used by the Court in *Marens* to permit the plaintiffs to have access to some, but less than all, of the information they seek, with the understanding that if, following the initial, limited review, additional discovery would make sense under the Rule 26(b)(2) factors, it will be provided. Cost shifting or sharing also should be considered.

If, following their consultations, counsel find that there still are differences that cannot be overcome by negotiation, as likely will

be the case, they will contact me, and a discovery conference will be set promptly. While I am mindful of the fact that the commentary to the recent rule changes emphasizes the need for the court actively to be involved in applying the Rule 26(b)(2) factors, this involvement necessarily must follow, not precede, the parties own good faith efforts to do so. Therefore, if there is to be a discovery conference, the court will expect counsel to demonstrate that they have fully considered the cost/benefit factors, and made reasonable modifications of their positions to accommodate them.

Accordingly, it is this _____ day of March, 2001, ordered that the plaintiffs' motion to compel discovery from the local defendants is denied, without prejudice, and the parties are to take further action in accordance with this order.