2013 CO 36

**In re DCP MIDSTREAM, LP, a
Delaware limited partnership,
Plaintiff**

v.

**ANADARKO PETROLEUM CORPORA-
TION, a Delaware corporation; Kerr–
McGee Oil & Gas Onshore LP, a Dela-
ware limited partnership; and Kerr–
McGee Gathering LLC, a Delaware lim-
ited liability company, Defendants.**

**12SA307**

Supreme Court of Colorado.

June 24, 2013

Perkins Coie LLP, Robert N. Miller, Michael A. Sink, Elizabeth Manno Banzhoff, Denver, Colorado, Barnes & Lewis, LLP, Robert N. Barnes, Oklahoma City, Oklahoma, Attorneys for Plaintiff.

Lewis, Bess, Williams & Weese P.C., Ezekiel J. Williams, Steven K. Imig, Christopher S. Mills, Lee F. Fanyo, Denver, Colorado, Susman Godfrey LLP, Mary Kathryn Sammons, Mark L.D. Wawro, Karen A. Oshman, David M. Peterson, Houston, Texas, Susman Godfrey LLP, LeElle Krompass, Dallas, Texas, Attorneys for Defendants.

Poulson, Odell & Peterson, LLC, Scott M. Campbell, Jeremy I. Ferrin, Denver, Colorado, Attorneys for Amicus Curiae Chevron U.S.A. Inc.

Shook, Hardy & Bacon L.L.P., Jonathan H. Gregor, Kansas City, Missouri, Shook, Hardy & Bacon L.L.P., Mark A. Behrens, Washington, DC, Attorneys for Amici Curiae National Association of Manufacturers and American Tort Reform Association.

Bjork Lindley Little PC, Robert C. Mathes, Heather R. Buller, Denver, Colorado, Attorneys for Amici Curiae American Petroleum Institute and American Association of Professional Landmen.

Wells, Anderson & Race, LLC, Mary A. Wells, L. Michael Brooks, Marilyn S. Chappell, Denver, Colorado, Attorneys for Amicus Curiae Product Liability Advisory Council.

CHIEF JUSTICE BENDER delivered the Opinion of the Court.

¶ 1 This original proceeding involves questions about the scope of discovery under Rule 26 of the Colorado Rules of Civil Procedure and the application of the attorney-client privilege to title opinions prevalent in the oil and gas industry.

¶ 2 Plaintiff DCP Midstream, LP, the respondent in this court, sued Anadarko Petroleum Corporation, the petitioner, for breach of contract and other claims. DCP asserted eleven breach of contract claims but stated in its complaint that it anticipated adding additional breach of contract claims after conducting discovery. During discovery, DCP sent Anadarko fifty-eight requests for production seeking millions of pages of paper and electronic documents and many of Anadarko's "title opinions"—attorney-authored opinions about the state of title to land or mineral interests. Anadarko refused to produce many of the requested documents. DCP then filed a motion to compel. In response, Anadarko argued that many of DCP's requests were not relevant to the eleven breach of contract claims pleaded and were thus outside the scope of discovery permitted by C.R.C.P. 26(b)(1). Anadarko also argued that the title opinions were privileged attorney-client communications.

¶ 3 Without holding a hearing, the trial court granted DCP's motion. The trial court did not address any of Anadarko's objections, nor did it provide any analysis under C.R.C.P. 26(b) in support of its conclusions. In a later written order, the trial court reasoned that DCP was entitled to discovery on any issue that is or may become relevant and ruled that Anadarko's title opinions were not privileged because they were based on public information. Following this order, Anadarko petitioned this court for relief under C.A.R. 21.

¶ 4 This proceeding raises important questions about the scope of discovery and the extent to which trial courts must manage the discovery phase of a case to accomplish the overriding purpose of our civil rules—"the just, speedy, and inexpensive determination of every action." C.R.C.P. 1. The civil rules, and our cases interpreting them, reflect an evolving effort to require active judicial management of pretrial matters to curb discovery abuses, reduce delay, and decrease litigation costs. See C.R.C.P. 16 committee comment ("It is expected that trial judges will assertively lead the management of cases to ensure that justice is served.").

¶ 5 This principle of active judicial management is also reflected in C.R.C.P. 26(b), which defines the permissible scope of discovery in any given case. As amended in 2002, C.R.C.P. 26(b)(1) restricts the scope of discovery available as a matter of right to that relevant to the "claim or defense of any party." The trial court may allow broader discovery into the "subject matter" involved in the action for "good cause"—a standard that is "meant to be flexible" but is otherwise undefined. As it did before the 2002 amendments, C.R.C.P. 26(b)(2) imposes limits on the number of depositions, interrogatories, and requests for production, and these limits can also be modified for "good cause"—a standard that requires the trial court to consider the cost-benefit and proportionality factors listed in subsection (b)(2)(F).

¶ 6 It is clear that the "claim or defense" category is intended to be narrower than the "subject matter" category, and broader discovery should be permitted only for good cause. It is also clear that the 2002 amendments are designed "to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Thus, the amendments are intended to narrow the scope of permissible discovery available to parties as a matter of right and to require active judicial management when a party objects that the discovery sought exceeds that scope.

¶ 7 The rule suggests that if a party objects to discovery because it is not relevant to a claim or defense, then the trial court must become involved. From the rule's plain language, it appears that the trial court need only make a simple determination as to whether the discovery sought is relevant to any party's "claim or defense" and, if not, whether good cause exists for permitting discovery into the "subject matter" of the case.

However, the rule does not explain the difference between discovery relevant to a "claim or defense" and discovery relevant to the "subject matter." The advisory committee's notes offer a practical approach. They state that "[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." We perceive no meaningful distinction between the result of this approach and the goal of the rule's "claim or defense" and "subject matter" categories, as both require active judicial management of discovery when disagreements about the scope of discovery arise. We prefer the practical approach offered by the advisory committee's notes because it avoids the possibility of additional litigation that the "claim or defense" and "subject matter" categories appear destined to invite.

¶ 8 C.R.C.P. 26(b) requires trial courts to take an active role managing discovery when a scope objection is raised. When faced with a scope objection, the trial court must determine the appropriate scope of discovery in light of the reasonable needs of the case and tailor discovery to those needs. Because each case is unique and deserves unique treatment, the reasonable needs of the case will necessarily vary, depending on the subject matter and complexity of the case, the nature of the parties' claims or defenses, and the discovery necessary to resolve the dispute. To tailor discovery to the specific needs of the case, we find the cost-benefit and proportionality factors listed in C.R.C.P. 26(b)(2)(F) helpful. Like the 2002 amendments, these factors require active judicial management to control excessive discovery.

¶ 9 Hence, we hold that, to resolve a dispute regarding the proper scope of discovery in a particular case, the trial court should, at a minimum, consider the cost-benefit and proportionality factors set forth in C.R.C.P. 26(b)(2)(F). When tailoring discovery, the factors relevant to a trial court's decision will vary depending on the circumstances of the case, and trial courts always possess discretion to consider any or all of the factors listed—or any other pertinent factors—as the needs of the case require.

¶ 10 After review of the trial court's order compelling discovery of voluminous documents and extensive electronic information, we conclude that the trial court has not yet taken an active role managing discovery because it has not determined the appropriate scope of discovery in light of the reasonable needs of the case and has not attempted to tailor discovery to those needs. We also conclude that the trial court's analysis compelling production of Anadarko's title opinions is without legal support. Thus, we conclude that the trial court abused its discretion. We make the rule absolute and return the case to the trial court for proceedings consistent with this opinion.

## I. Facts and Proceedings Below

¶ 11 The parties to this original proceeding are oil and gas companies that gather, transport, and process natural gas in the Wattenberg Gas Field in northeastern Colorado. Plaintiff DCP Midstream, LP is a natural gas transporter, meaning it transports natural gas from gas wells to processing plants where the gas is eventually sold. This is accomplished under contractual arrangements called "gas purchase, gathering, and processing agreements" between DCP and natural gas producers such as defendant Kerr–McGee Oil & Gas Onshore, LP.

¶ 12 According to DCP, it had a "stable, productive relationship" with Kerr–McGee Oil & Gas until defendant Anadarko Petroleum Corporation acquired it. At that time, Anadarko Petroleum also acquired defendant Kerr–McGee Gathering LLC, another natural gas transporter and DCP competitor. Since then, according to DCP's complaint, Anadarko Petroleum has directed Kerr–McGee Oil & Gas and Kerr–McGee Gathering to transport and process natural gas in violation of DCP's contractual rights.

¶ 13 DCP sued Anadarko Petroleum, Kerr–McGee Oil & Gas, and Kerr–McGee Gathering (collectively, "Anadarko"), alleging claims for breach of contract and other claims. DCP's complaint stated that it was a party to about fifty contracts with Anadarko covering thousands of wells. The complaint identified eleven contracts covering about 900 gas wells that DCP alleged Anadarko had

breached. However, the complaint also stated that, because "the extent of [the] breaches is not yet fully known," DCP anticipated adding additional breach of contract claims after conducting discovery.

¶ 14 As part of discovery, DCP sent Anadarko fifty-eight requests for production seeking millions of pages of paper and electronic documents. DCP requested Anadarko's "complete contract file" for thousands of wells and all title opinions[1] concerning those wells. Anadarko refused to produce many of these documents, arguing that many of DCP's requests were outside the scope of discovery under C.R.C.P. 26(b)(1) because they were not relevant to the eleven breach of contract claims specified in its complaint. Anadarko also refused to produce the title opinions, arguing that they were privileged attorney-client communications, but it did not provide DCP or the court with a privilege log.

¶ 15 Because the parties were unable to resolve the discovery dispute on their own, DCP filed a motion to compel and requested a hearing. In its motion, DCP argued that all the contract files were relevant because its allegations involved more than fifty contracts concerning thousands of wells, but DCP conceded that it had not "directly identified each and every contract between the parties" in its complaint. DCP also argued that the title opinions were not privileged because they were based on public information, not confidential information from a client.

¶ 16 Ruling on the briefs and without holding a hearing, the trial court granted DCP's motion to compel and ordered Anadarko to produce all responsive documents and information within twenty days. The court did not address any of Anadarko's objections, nor did it provide any analysis under C.R.C.P. 26(b) in support of its conclusions.

¶ 17 Days later, Anadarko filed an emergency motion seeking reconsideration of the court's order or, in the alternative, a stay to seek relief from this court. It argued that the court erred under C.R.C.P. 26(b) by per-

mitting discovery beyond the scope of the eleven breach of contract claims identified in DCP's complaint without DCP claiming or the trial court finding that good cause existed to do so. Anadarko also argued that the court erred by requiring disclosure of privileged title opinions without conducting an in camera review.

¶ 18 After receiving this motion, the trial court held a telephone conference with the parties. The court explained that it had rejected Anadarko's scope-of-discovery argument because DCP was not limited to discovery pertaining only to the eleven contracts pleaded in its complaint. Rather, DCP was permitted to discovery "reasonably designed to lead to admissible information":

> [T]he rule on discovery up here is turn it over. If they ask for it and it's legitimately related to an issue that may become relevant, and especially in a case like this when you're on notice, Anadarko, that they're after other wells and other contracts, you have got to turn it over.... They already told you in the complaint they're hunting. And they get to because they get to add other allegations.

Because discovery would involve millions of documents, the trial court suggested that the parties confer to narrow the scope of discovery, but the court stated that it did not "have the power to make you do that."

¶ 19 In a later written order, the court reasoned that DCP was entitled to discovery that is or may become relevant and, because DCP's "breach [of contract] claim may expand and may ultimately encompass thousands of wells," DCP was entitled to discovery that may lead to more specific allegations "regarding additional contracts that were breached, thereby stemming from the same claim." The court also rejected Anadarko's privilege argument, reasoning that title opinions are not privileged if "based on public information" or if they had been used in the public domain.

¶ 20 Following this order, Anadarko petitioned this court for review under C.A.R. 21.

---

1. A title opinion is a "statement of opinion by an attorney, often in the form of a letter, as to the state of the title to land, mineral, royalty or working interests." 8 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers, Oil and Gas Law* 1080 (2012).

We issued the rule to show cause and now make the rule absolute.

## II. Original Jurisdiction and Standard of Review

¶ 21 Before discussing the parties' contentions, we address whether an original proceeding under C.A.R. 21 is the proper method to review the trial court's order granting DCP's motion to compel and, if so, the appropriate standard of review.

¶ 22 Discovery orders are interlocutory in nature and are generally not reviewable in an original proceeding. However, we may exercise our original jurisdiction when a pretrial ruling places a party at a significant disadvantage litigating the merits of the controversy and where a remedy on appeal would be inadequate. *Gateway Logistics, Inc. v. Smay*, 2013 CO 25, ¶ 11, 302 P.3d 235. Exercise of our original jurisdiction is also appropriate to address issues of "significant public importance which we have not yet examined." *Leaffer v. Zarlengo*, 44 P.3d 1072, 1077 (Colo.2002).

¶ 23 Here, the trial court's order compelling discovery requires Anadarko to produce millions of pages of paper and electronic documents, some of which may be privileged. The court's order will place Anadarko at a significant disadvantage litigating the merits of the case irrespective of the outcome of any appeal from a final judgment, given the breadth of the order and the cost of complying with it. In addition, Anadarko's arguments raise issues of first impression under C.R.C.P. 26 and in the attorney-client privilege context. Accordingly, we conclude that it is appropriate to exercise our original jurisdiction in this case.

¶ 24 Motions to compel discovery are "committed to the discretion of the trial court," and we review them for an abuse of discretion. *Gateway Logistics, Inc.*, ¶ 13 (quoting *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 720 (Colo.1999)). A court abuses its discretion if its decision is "manifestly

unreasonable, arbitrary, or unfair." *Id.* To the extent that our review requires us to interpret the Colorado Rules of Civil Procedure, we proceed under a de novo standard of review. *See Averyt v. Wal–Mart Stores Inc.*, 265 P.3d 456, 460 (Colo.2011). We construe them liberally to effectuate their objective to secure the just, speedy, and inexpensive determination of every case and their truth-seeking purpose. C.R.C.P. 1; *Gateway Logistics, Inc.*, ¶ 13.

## III. Analysis

¶ 25 Anadarko contends that the trial court abdicated its responsibility to manage discovery in this case, making two arguments pertinent to our discussion. First, Anadarko argues that the court erred by granting DCP's motion to compel because it expanded the scope of discovery beyond the allegations in DCP's complaint and, in effect, permitted DCP to "hunt" for breach of contract claims in addition to the eleven claims pleaded. To support this argument, Anadarko points to C.R.C.P. 26(b)(1), which restricts discovery available as a matter of right to that relevant to "the claim or defense of any party." Second, Anadarko contends that the court erred by compelling production of attorney-authored title opinions because they are protected by the attorney-client privilege as a matter of law unless the privilege has been waived. Anadarko also argues that the trial court erred by failing to conduct an in camera review of the title opinions.

¶ 26 We begin with C.R.C.P. 26(b). We examine its language and purpose, consider federal cases construing the corresponding federal rule, and rely on the federal rule's advisory committee's notes, which C.R.C.P. 26(b) incorporates by reference.[2] We conclude that, when a scope objection is raised, C.R.C.P. 26(b) requires the trial court to take an active role managing discovery and to determine the appropriate scope of discovery in light of the reasonable needs of the case. We then turn to title opinions. We examine the nature of title opinions, consider the at-

---

2. The committee comment to C.R.C.P. 26 provides: "Federal 'Committee Notes' to the December 1, 1993 and December 1, 2000 amendments of Fed.R.Civ.P. 26 are incorporated by reference and where applicable should be used for interpretive guidance." For clarity's sake, we cite directly to the federal rule's advisory committee's notes where applicable.

torney-client privilege in other contexts, and conclude that title opinions, like any document sought in discovery, may be privileged if the statutory and procedural requirements necessary to claim the attorney-client privilege have been met.

## A. C.R.C.P. 26(b)

¶ 27 The overriding purpose of the Colorado Rules of Civil Procedure is "to secure the just, speedy, and inexpensive determination of every action." C.R.C.P. 1. To this end, our rules reflect a growing effort to require active judicial management of pretrial matters to reduce delay and the increased costs associated with it. "Delay devalues judgments, creates anxiety in litigants and uncertainty for lawyers, results in loss or deterioration of evidence, [and] wastes court resources." *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 976 (Colo.1999) (internal quotation omitted). Delay also increases costs. The increased costs associated with protracted litigation may force a party into an unwarranted settlement or may deter a party from bringing a viable claim.[3] Active judicial management is necessary to address these problems, and our rules have evolved to stress this principle. *See* C.R.C.P. 16 committee comment ("It is expected that trial judges will assertively lead the management of cases to ensure that justice is served."); *Burchett v. South Denver Windustrial Co.*, 42 P.3d 19, 21 (Colo.2002) (holding that C.R.C.P. 16 requires trial courts to implement effective caseflow management plans and actively monitor and manage their cases). We have recognized the principle that trial courts, not attorneys, should closely control and manage the cases moving through our judicial system. *Burchett*, 42 P.3d at 21.

¶ 28 This principle of active judicial management is also reflected in the rule defining the scope of discovery, C.R.C.P. 26(b). Before 2002, C.R.C.P. 26(b)(1) permitted discovery into any matter, not privileged, relevant to the subject matter involved in the action. In 2002, however, we amended C.R.C.P. 26(b)(1) to conform to its federal counterpart. Now, C.R.C.P. 26(b)(1) restricts the scope of discovery available as a matter of right to discovery relevant to the "claim or defense of any party." The rule permits a court to allow broader discovery into the "subject matter" involved in the action for "good cause"—a standard that is "meant to be flexible" but is otherwise undefined.[4] The scope of discovery outlined in C.R.C.P. 26(b)(1) is also "subject to the limitations and considerations contained in subsection (b)(2)." As it did before the 2002 amendments, C.R.C.P. 26(b)(2) imposes limits on the permissible number of depositions, interrogatories, and requests for production, and these limits can also be modified for "good cause"—a standard that requires the court to consider several cost-benefit and proportionality factors listed in subsection (b)(2)(F), including whether a less expensive method to obtain the discovery is available and whether the burden or expense of proposed discovery outweighs its likely benefit.[5]

---

**3.** *See* The Sedona Conference, *The Sedona Conference Cooperation Proclamation* 1 (2008) (noting that adversarial conduct during discovery increases costs, leads to unproductive discovery disputes and, in some cases, "preclud[es] adjudication on the merits altogether"); David C. Steelman, *Caseflow Management: The Heart of Court Management in the New Millenium*, at xvi, 64 (3d ed.2004) (noting that delay increases costs, affects access to justice, and undermines our judicial system's goals of equality, fairness, and integrity in legal proceedings). In cases that implicate e-discovery, such as this one, these costs can be especially significant. A routine request for production can involve a massive amount of electronically stored information that must be located, searched, reviewed, and produced—all at enormous expense.

**4.** C.R.C.P. 26(b)(1) provides:

Subject to the limitations and considerations contained in subsection (b)(2) of this Rule, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

**5.** C.R.C.P. 26(b)(2)(F) provides:

¶ 29 The plain language of C.R.C.P. 26(b)(1) appears to create a two-tiered process of attorney-managed and court-managed discovery. Under the first tier parties are permitted, as a matter of right, to seek discovery into any non-privileged matter "relevant to the claim or defense of any party." Under the second tier the court may permit broader discovery into "any matter relevant to the subject matter involved in the action" for good cause. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir.2009); 6 *Moore's Federal Practice* § 26.41[1] (3d ed.2012). Because discovery is still permitted into the subject matter involved in the action, the 2002 amendments did not alter the overall scope of discovery but rather "alter[ed] the scope of discovery available as a matter of right to the attorneys without court authorization." 8 Charles Alan Wright, et. al, *Federal Practice and Procedure* § 2008, at 129 (2010). Although it is hoped that litigants will focus on the actual claims or defenses involved in the case, confer in good faith, and make concerted efforts to reach an agreement on scope-of-discovery issues without judicial intervention, the 2002 amendments signal to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and they signal to the parties that they have no entitlement to discovery to develop new claims or defenses not already identified. Fed.R.Civ.P. 26 advisory committee's note (2000).

¶ 30 C.R.C.P. 26 does not explain the difference between discovery relevant to a "claim or defense" and discovery relevant to the "subject matter," and the advisory committee's notes are not helpful on this point. They state that a "variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action," and what is relevant will necessarily depend on the unique circumstances of any given case.[6] As the advisory committee's notes make clear, the "dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision." Fed.R.Civ.P. 26 advisory committee's note (2000).[7]

---

In determining good cause to modify the limitations of this subsection (b)(2), the court shall consider the following:

(i) Whether the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

(ii) Whether the party seeking discovery has had ample opportunity by disclosure or discovery in the action to obtain the information sought;

(iii) Whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues in the litigation, and the importance of the proposed discovery in resolving the issues; and

(iv) Whether because of the number of parties and their alignment with respect to the underlying claims and defenses, the proposed discovery is reasonable.

6. Cases and treatises discussing the corresponding federal rule provide similarly unhelpful guidelines. *See, e.g., Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F.Supp.2d 1273, 1278 (S.D.Fla.2008) ("Put more simply, a matter is deemed to be irrelevant if it does not pertain to a claim or defense."); *In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 24 (D.Conn.2003) (stating that relevancy depends on the circumstances of the case); 6 *Moore's Federal Practice* § 26.41[6][c] (noting that the court's initial focus must be on the claims or defenses actually asserted in the pleadings but cautioning against an overly restrictive view because discovery should ordinarily be allowed unless it is clear that the information sought "has no possible bearing" on the claims or defenses of the parties).

7. This case highlights the problem of delineating and applying the distinction between discovery relevant to a "claim or defense" and discovery relevant to the "subject matter." DCP asserted eleven breach of contract claims. Three of those contracts contained "Area of Mutual Interest" (AMI) clauses. An AMI is an agreement among parties that describes a geographical area within which the parties agree to share future interests, such as new gas leases. These AMI clauses gave DCP a contractual right to gather and to process gas from Anadarko's new gas leases in a 684–square–mile area in the Wattenberg Field. In its motion to compel, DCP argued that Anadarko operated thousands of wells in that area and that it was entitled to discovery concerning all of those wells—as well as additional contracts that Anadarko had entered into with third parties concerning the same AMIs—because they were relevant to whether Anadarko breached the AMI clauses with respect to DCP. Given this situation, it is practically impossible for the trial court to determine which of DCP's discovery requests are

¶ 31 Most federal cases construing the corresponding federal rule do not attempt to parse discovery into these categories. Many courts quote or paraphrase the amendments and proceed without considering whether they effected any meaningful change, often deciding cases on broad relevancy principles that appear unchanged from pre-amendment practice.[8] These decisions may be based on an "ingrained mindset of liberal discovery under the old standard,"[9] but courts are likely concerned that any attempt to define what is relevant to a party's "claim or defense" and what is relevant to the "subject matter" could provoke additional procedural contention among litigants debating the differences between the two categories. This type of discovery dispute creates delay and increases costs, which is the very problem that the 2002 amendments are intended to address.[10]

■ ¶ 32 Despite this ambiguity, it is clear that the "claim or defense" category is intended to be narrower than the "subject matter" category, and discovery into the broader "subject matter" category should be allowed only for good cause. *See Thompson v. Dep't of Hous. and Urban Dev.*, 199 F.R.D. 168, 172 (D.Md.2001). The amendments are thus intended to narrow the scope of discovery available as a matter of right in some meaningful way. Additionally, as the advisory committee's notes make clear, the 2002 amendments are also meant to address concerns about the breadth and expense of disproportionate discovery by "involv[ing] the court more actively in regulating the breadth of sweeping or contentious discovery." They make clear that "involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery." Fed.R.Civ.P. 26 advisory committee's note (2000). Thus, the 2002 amendments to C.R.C.P. 26(b)(1) narrow the scope of permissible discovery available as a matter of right and require active judicial management when a party objects that the discovery sought exceeds that scope.

¶ 33 If a party objects to discovery because it is not relevant to any party's claim or defense, then the trial court must become involved. From the rule's plain language, it appears that the trial court need only make a simple determination as to whether the discovery sought is relevant to any party's "claim or defense" and, if not, whether good cause exists for permitting broader discovery into the "subject matter" of the case. However, the rule does not explain the difference between discovery relevant to a "claim or defense" and discovery relevant to the "sub-

---

relevant to its contractual claims and which are relevant to the subject matter involved in the action. Arguably, they may be both. For parties to argue this amorphous distinction and then for the trial court to attempt to delineate and define the meaning of a claim or defense as distinguished from the subject matter seems counterintuitive to the purpose of the amendments.

**8.** *See, e.g., Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695–96 (S.D.Fla.2007) (noting that discovery should be allowed unless it is clear that the information sought has no bearing on the "claims and defenses of the parties or otherwise on the subject matter of the action"); *Comprehensive Habilitation Servs. Inc. v. Commerce Funding Corp.*, 240 F.R.D. 78, 83 (S.D.N.Y.2006) (stating that a discovery request need only encompass a matter that bears on, or reasonably could bear on, "any issue that is or may be in the case" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978))); *Breon v. Coca–Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D.Conn.2005) (noting that a request for discovery should be considered relevant if there is *"any possibility"*

that it may be relevant to a claim or defense of any party) (emphasis in original); *see also* John S. Beckerman, *Confronting Civil Discovery's Fatal Flaws*, 84 Minn. L.Rev. 505, 510–11 (2000) (stating that the amendments are "basically a semantic change unlikely to have much salutary effect on the conduct of discovery").

**9.** Christopher C. Frost, Note, *The Sound and the Fury or the Sound of Silence?: Evaluating the Pre–Amendment Prediction and Post–Amendment Effects of the Discovery Scope–Narrowing Language in the 2000 Amendments to Federal Rule of Civil Procedure 26(b)(1)*, 37 Ga. L.Rev. 1039, 1062 (2003) [hereinafter *"The Sound and the Fury"*].

**10.** The amendments have been criticized as inviting satellite litigation on this very point. *See* Thomas D. Rowe Jr., *A Square Peg in a Round Hole? The 2000 Limitation on the Scope of Federal Civil Discovery*, 69 Tenn. L.Rev. 13, 22–23 (2001) (noting that the amendments create the potential for satellite litigation but conceding that no flood of satellite litigation has yet emerged).

ject matter," and, as noted, any attempt to define the specific contours of this distinction may only encourage additional contention among litigants. The advisory committee's notes offer a practical approach. They state that "[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." We perceive no meaningful distinction between the outcome of this approach and the goal of the rule's "claim or defense" and "subject matter" categories, as both require active judicial management of discovery when disagreements about the scope of discovery arise. We prefer and adopt the practical approach offered by the advisory committee's notes because it avoids the possibility of additional litigation that the "claim or defense" and "subject matter" categories are destined to invite. This common-sense approach will help avoid the pitfalls of providing an analytical framework buttressed by a distinction that, in practice, is likely to have little meaning,[11] and it furthers our obligation to construe the rules liberally to give effect to their overriding purpose.

¶ 34 C.R.C.P. 26(b) requires trial courts to take an active role managing discovery when a scope objection is raised. When faced with a scope objection, the trial court must determine the appropriate scope of discovery in light of the reasonable needs of the case and tailor discovery to those needs. Because each case is unique and deserves unique treatment, the reasonable needs of the case will necessarily vary, depending on the subject matter and complexity of the case, the nature of the parties' claims or defenses, and the discovery necessary to resolve the dispute. To tailor discovery to the specific needs of the case, we find the cost-benefit and proportionality factors listed in C.R.C.P. 26(b)(2)(F) helpful. Like the 2002 amendments, these factors require active judicial management to control excessive discovery.

¶ 35 Hence, we hold that, to resolve a dispute regarding the proper scope of discovery in a particular case, the trial court should, at a minimum, consider the cost-benefit and proportionality factors set forth in C.R.C.P. 26(b)(2)(F). When tailoring discovery, the factors relevant to a trial court's decision will vary depending on the circumstances of the case, and trial courts always possess discretion to consider any or all of the factors listed—or any other pertinent factors—as the needs of the case require. We stress that the cost-benefit and proportionality factors set forth in C.R.C.P. 26(b)(2)(F) are not exclusive to this determination, and the trial court should make findings about the factors used and conclusions reached.

¶ 36 Having outlined the trial court's role to manage discovery, we turn to the trial court's order compelling discovery in this case. Here, the court rejected Anadarko's scope objections, reasoning that, because DCP's complaint put Anadarko on notice that its claims may expand and involve more contracts and more wells, it was entitled to discovery concerning those allegations. The court also appears to reason that, if the litigation expands to encompass more wells, DCP "will not be adding any new claims or theories" but would be increasing the number of wells subject to its original breach of contract claim.

¶ 37 It is unclear from the court's order the basis on which it compelled production. However, after our review of the court's order, we are convinced that the court did not take an active role managing discovery in light of Anadarko's scope objections. The court made no findings about the appropriate scope of discovery in light of the reasonable needs of the case and made no attempt to tailor discovery to those needs. Hence, we conclude that the trial court abused its discretion, and we return this case to that court for further proceedings and to make findings consistent with this opinion. The court may hold a hearing, request additional argument,

---

11. *See* Frost, *The Sound and the Fury,* 37 Ga. L.Rev. at 1071 (speculating that most defendants will not bother to raise a "claim or defense" argument because winning that argument "is really no victory at all, because the obvious subsequent move by the plaintiff will be to invoke the 'good cause' provision to get 'subject matter discovery' "); *see also Thompson,* 199 F.R.D. at 172.

or receive additional evidence. The court must determine the appropriate scope of discovery in light of the reasonable needs of the case and tailor discovery to those needs.[12]

## B. Title Opinions

¶ 38 Having addressed Anadarko's scope-of-discovery arguments, we now turn to Anadarko's contention that the trial court erred by compelling production of title opinions without conducting an in camera review to assess its claims of attorney-client privilege. The trial court reasoned that Anadarko's title opinions were not privileged because they were "based on public information."[13] Anadarko argues that the trial court's reasoning is without legal support and that attorney-authored title opinions are "privileged as a matter of law unless that privilege is waived." In response, DCP argues that title opinions are subject to the same rules governing the attorney-client privilege in other contexts, and we should interpret the trial court's order as compelling production of only non-privileged title opinions. DCP also argues that the trial court could not review Anadarko's privilege objections in camera because Anadarko never provided DCP or the court with a privilege log outlining its specific objections. To address the parties' contentions, we describe the general nature of title opinions and then review the circumstances under which the attorney-client privilege applies.

¶ 39 A title opinion is a "statement of opinion by an attorney, often in the form of a letter, as to the state of the title to land, mineral, royalty or working interests." 8 Martin & Kramer, *William & Meyers, Oil and Gas Law* 1080. Typically, it contains a description of land covered by the opinion, a summary of materials examined to render the opinion, a summary of any ownership interests, and a recommendation as to what curative steps, if any, should be taken before property is purchased or drilled on. *Id.* DCP has provided us with an example of a title opinion, which, in most aspects, conforms to the description above. It is authored by an attorney and is in the form of a letter, and it contains descriptions of the land interests covered by the opinion, a summary of examined materials, and recommendations and advice about what curative steps to take before the land is purchased.

¶ 40 In Colorado, the attorney-client privilege is codified by statute, and it operates to protect communications between attorney and client relating to legal advice. § 13–90–107(1)(b), C.R.S. (2012); *Wesp v. Everson,* 33 P.3d 191, 196 (Colo.2001). The privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations. *People v. Madera,* 112 P.3d 688, 690 (Colo. 2005). The attorney-client privilege is not absolute. There are recognized exceptions to the attorney-client privilege, and the privilege may be waived in certain circumstances. *People v. Trujillo,* 144 P.3d 539, 542–43 (Colo.2006) (noting that an implied waiver may exist when a client asserts a claim or defense that focuses on attorney advice or when a client discloses privileged communications to a third party).

¶ 41 Here, the trial court concluded that title opinions were not privileged because they were "based on public information," relying on *Congoleum Industries, Inc. v. GAF Corp.* for support. In that case, the United States District Court for the Eastern District of Pennsylvania noted that, because the purpose of the attorney-client privilege is to protect communications by a client who

---

**12.** Anadarko makes two additional arguments in support of its contention that the trial court abdicated its responsibility to manage discovery in this case. First, Anadarko contends that the court "punished" Anadarko for standing on its objections under C.R.C.P. 34(b) instead of filing for a protective order. Second, it argues that the court erred by not making adequate findings in its initial order compelling discovery. Even assuming that there is support in the record for Anadarko's arguments, we do not address them because our disposition of this case renders them moot.

**13.** The trial court also compelled production of the title opinions because they had been used in the public domain. We find no support for this assertion in the record before us. To the extent that the trial court's finding is relevant to whether the privilege has been waived, it is also premature.

seeks legal advice, the privilege does not protect an attorney's opinions that are unrelated to "any such communication by the client." *Congoleum Indus., Inc. v. GAF Corp.*, 49 F.R.D. 82, 85–86 (E.D.Pa.1969). Applying this principle, the *Congoleum* court concluded that certain documents were not protected by the attorney-client privilege because they contained "general corporate business decisions as opposed to legal advice based upon confidential information." *Id.* at 86.

¶ 42 We read *Congoleum* for the familiar proposition that the attorney-client privilege applies to legal advice, not "general corporate business decisions" containing "basically public information." *See id.* To conclude that legal advice loses its privileged character when based on public information, as the court here appears to reason, would render the attorney-client privilege meaningless in many circumstances. Attorneys regularly base legal advice on public information. Indeed, the statutes and caselaw that inform most legal advice are publicly available at law libraries and on the Internet. What matters is that the legal advice is given in response to a confidential client communication, irrespective of whether that advice is informed by publicly available information. Accordingly, because the trial court's reasoning is without legal support, we hold that the court abused its discretion by compelling production of title opinions.

¶ 43 Rather, to determine whether a communication warrants protection under the attorney-client privilege, our precedent dictates that the appropriate analysis is whether a particular communication concerns or contains confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction. *See Madera*, 112 P.3d at 690. From the general information provided to us, attorney-au-

thored title opinions, insofar as they contain legal advice based on a confidential client communication, appear to fall within that doctrine's ambit.[14] According to one commentator, "title opinions are much more than just a recitation of that which appears in the public records. They constitute the attorney's opinion concerning title to the property."[15] Still, contrary to Anadarko's contention that title opinions are privileged as a matter of law, we avoid making any sweeping pronouncement that all title opinions are, or are not, protected by the attorney-client privilege. Just as "there is no flat rule exempting all communications between a title attorney and a client from the reach of the attorney-client privilege," there is no flat rule including them. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 72 n. 3. Rather, a particular title opinion, like any document sought in discovery, may contain privileged attorney-client communications if the parameters of that doctrine are met. To make this determination, the particular title opinions must be examined.

¶ 44 This document-by-document approach is supported by our precedent. We have consistently stressed that no blanket privilege for all attorney-client communications exists. *Wesp*, 33 P.3d at 197. Rather, the party asserting the privilege bears the burden of establishing that a particular communication is privileged, and the party must claim the privilege "with respect to each specific communication." *Id.* To withhold discovery under a claim of privilege, C.R.C.P. 26(b)(5) requires a party to "make the claim expressly" and describe the nature of the withheld information in a privilege log. *Alcon v. Spicer*, 113 P.3d 735, 741 (Colo.2005) (quoting C.R.C.P. 26(b)(5)). The withheld information must be described "with sufficient detail so that the opposing party and, if necessary, the trial court can assess the

14. Of course, "[n]ot every piece of an attorney's work product falls within the attorney-client privilege. Where, for example, an attorney merely acts as a scrivener—facilitating the consummation of a real estate transaction, passing title, and disbursing funds—the documents generated by those actions are typically not privileged." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 72 (1st Cir.2011). Still, in such situa-

tions, "[i]t takes little imagination to conceive instances in which a particular communication" may warrant protection under the attorney-client privilege. *Id.* at 72 n. 3.

15. George W. Mueller, *Use of Another Party's Title Opinion*, 49 Rocky Mt. Min. L. Inst. § 27.05 (2003).

claim of privilege *as to each withheld communication.*" *Id.* at 742 (emphasis added).

¶ 45 Anadarko has not provided DCP or the trial court with a privilege log outlining its specific claims of privilege as to each withheld title opinion, and we fail to see how DCP, or the trial court, could have assessed Anadarko's privilege objections without such information. For this reason, Anadarko has not yet met its burden of establishing that any title opinions are protected as privileged attorney-client communications. However, because of our holding reversing the trial court's discovery order and requiring the court to take an active role managing discovery in this case, the scope of discovery may change and render many or some of DCP's requests for the title opinions moot. Accordingly, after the trial court engages in the scope-of-discovery analysis outlined above, Anadarko may claim the attorney-client privilege with respect to each requested title opinion, if necessary, but it must make the claim expressly and describe the nature of the withheld information in specific terms in a privilege log in accordance with our precedent. If DCP and Anadarko cannot agree about what title opinions, or portions of title opinions, are privileged, Anadarko may ask the trial court to conduct an in camera review to assess its privilege claims.[16]

## IV. Conclusion

¶ 46 For the reasons stated, we make the rule absolute and return the case to the trial court for further proceedings consistent with this opinion.

16. Both parties have made arguments about whether the attorney-client privilege has been waived. There is no information in the record from which to make this determination, and such a determination would be premature at this stage of the litigation. We note that title opinions appear to be shared with and relied on by third parties more than most attorney-client communications. *See* Mueller, *Use of Another Party's Title Opinion,* 49 Rocky Mt. Min. L. Inst. §§ 27.01, 27.05 (noting that title opinions are often shared with third parties and that an attorney should obtain a client's consent before using them in the preparation of opinions for a new client). This observation may be relevant to whether the communication was confidential or whether the

JUSTICE EID concurs in the judgment in part and concurs in part, and JUSTICE COATS joins in the concurrence in the judgment in part and the concurrence in part.

JUSTICE EID, concurring in the judgment in part and concurring in part.

¶ 47 The majority acknowledges that the 2002 rule change was meant to narrow the scope of discovery as a matter of right from material relevant to the "subject matter" of the litigation to that relevant to the "claims and defenses" raised in the litigation.[1] Maj. op. at 1190. But it ultimately finds this distinction to be entirely unhelpful in determining what discovery should be permitted, and leaves the distinction out of its analytical framework for determining the appropriate scope of discovery. Because, in my view, the distinction is not only helpful but forms the cornerstone of the discovery inquiry, I respectfully concur in the judgment only as to Part III.A. of the majority's opinion.

¶ 48 The majority puts little weight on the distinction between "claims and defenses" and the "subject matter" of the litigation because it is hard to draw and may have "little meaning." Maj. op. at 1190. I disagree on both points. As to the first, the majority appears to concede that there has been no flood of litigation over the distinction, as it cites to a law review article for the proposition that no such flood has occurred. Maj. op. at 1196 n. 10. On the second point, this very case shows that the distinction can be drawn. Moreover, far from having "little meaning," the distinction forms the centerpiece of the 2002 rule change.

client waived the privilege by permitting the opinion to be divulged to third parties. *See Trujillo,* 144 P.3d at 542. Still, we cannot, and do not, express any opinion about the particular title opinions at issue here.

1. Under the former version of Rule 26(b)(1), parties were entitled to discover any matter relevant to the "subject matter" of the litigation. The rule now states that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." C.R.C.P. 26(b)(1).

¶ 49 Here, DCP sought discovery as to contracts that are not the basis of its breach of contract claims in the complaint. Indeed, the trial court determined that DCP "was after other wells and *other contracts.*" (Emphasis added). The court reasoned that DCP "already told you [Anadarko] in the complaint *they're hunting. And they get to* because they get to add other allegations." (Emphasis added). Later, the court reiterated that the discovery sought "additional contracts that were breached," but reasoned, erroneously, that breaches of these additional contracts would be part of the "same claim." *Cf. Rickman v. Cone Mills Corp.,* 129 F.R.D. 181, 185 n. 6 (D.Kan.1989) (noting that an amendment that adds a breach of an independent contract constitutes a new claim for statute of limitations purposes) (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497 at 489–90 (2d ed.1989)). Under a straightforward reading of Rule 26(b)(1), DCP's discovery requests exceeded the "claims and defenses" raised in the action, and therefore the district court abused its discretion in compelling production absent a finding of "good cause." Indeed, the district court's "hunting" statement runs directly counter to the 2002 rule change, which was designed to "signal[ ] to the parties that they have *no entitlement to discovery to develop new claims or defenses* that are not already identified in the pleadings." Fed.R.Civ.P. 26 advisory committee's notes (2000) (emphasis added).

¶ 50 Despite the relative ease of drawing the distinction between "claims or defenses" and the "subject matter" of the litigation in this case, the majority stresses the difficulty of drawing the distinction as a general matter. It blames the rule for its failure to "explain the difference between discovery relevant to a 'claim or defense' and that relevant to the 'subject matter.'" Maj. op. at 33. It suggests that the advisory committee notes show that the rule change did not mean to focus on the distinction, but rather adopted a "practical approach" that focused on the needs of the litigation. Id. In the end, it abandons the distinction altogether. Instead, district courts are to take an active role in managing discovery disputes and should apply the cost-benefit factors of Rule 26(b)(2)(F) in that regard. *Id.* at 35 ("Hence, we hold that, to resolve a dispute regarding the proper scope of discovery in a particular case, the trial court should, at a minimum, consider the cost-benefit and proportionality factors set forth in C.R.C.P. 26(b)(2)(F).").

¶ 51 As an initial matter, the majority errs by suggesting that the advisory committee notes considered the distinction between "claims and defenses" and "subject matter" to be unimportant or impractical. On the contrary, the notes plainly state: "The Committee intends that the parties and the court *focus on the actual claims and defenses involved in the action.*" Fed.R.Civ.P. 26 advisory committee's notes (2000) (emphasis added). As discussed in part above, "[t]he rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Id.* The notes identify the problem the change was designed to address—namely, requests for "large quantities of discovery" justified on the basis of their relation to the subject matter of the ligation. *Id.* Thus, "[u]nder the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved *to determine whether the discovery is relevant to the claims or defenses* and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." *Id.* (emphasis added).

¶ 52 As the language of the 2002 rule change and the accompanying advisory committee notes make clear, the idea behind the change was to instruct district courts and parties to consider whether, as an initial matter, discovery based on claims and defenses would be sufficient. If so, discovery would come to an end. If not, the court must consider whether there is good cause to go further. The majority's analytical framework skips this first important step. And by skipping this first step, the framework loses sight of the purpose of the change—that is, to limit, where possible, discovery to claims and defenses, and, in the process, reduce

burdensome discovery requests. Of course, as the majority points out, the rule change was intended to encourage judicial management of discovery. Maj. op. at 1196. But the change also defined the *goal* of that management—that is, to limit discovery to claims and defenses where possible.

¶ 53 The majority's substitute focus on the cost-benefit factors listed in Rule 26(b)(2)(F) simply highlights the problem. Rule 26(b)(2) sets limits on, inter alia, the number of depositions, interrogatories, and requests for production that may be taken or served. Subsection (b)(2)(F) lists cost-benefit factors that should be considered in determining whether there is good cause for exceeding those limits. But the cost-benefit factors do not substitute for the limits themselves or render them meaningless. Similarly, even if, as the majority suggests, the factors listed in subsection (b)(2)(F) might inform whether there is good cause to go beyond discovery related to claims and defenses, they do not replace that limitation or render it meaningless. In sum, the factors merely inform whether there is good cause to depart from the limitations, but do not define the scope or limitations themselves.

¶ 54 In the end, I agree with the majority that the rule change was designed to encourage judicial management of discovery. But judicial management alone is not enough; it is a means not an end. The district court's error here was not only a failure to manage discovery, as the majority concludes, maj. op. at 1197, but a failure to manage it in a way defined by Rule 26(b)(1), which makes a distinction between "claims and defenses" on the one hand and the "subject matter" of the litigation on the other. Accordingly, I respectfully concur only in the result reached by the majority as to Part III.A. Based on the majority's recognition that title opinions are generally privileged, although subject to case-by-case review, I join Part III.B. of the opinion.

I am authorized to state that Justice COATS joins in the concurrence in the judgment in part and the concurrence in part.